1  **Annemarie Franklin, Esq.**  (CA Bar No. 150734)
2  <af102@nyc.rr.com>
   830 Broadway
3  P.O. Box 1024 Cooper Station
   New York, NY 10276-1024
4  212-475-1630

5
   7562 Ellis Avenue, Suite A5
6  Huntington Beach, CA 92648
   917-686-7420
7

8  Attorney for Plaintiffs

9

10              UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12

13  SERENDIP LLC & WENDY CARLOS,      )   Case CV08-07739 RGK (RCx)
                                      )
14              Plaintiffs,           )   **VERIFIED AMENDED**
                                      )   **COMPLAINT**
15                                    )   **FOR COPYRIGHT**
         vs.                          )   **INFRINGEMENT &**
16                                    )   **DEMAND FOR**
                                      )   **JURY TRIAL**
17  WARNER BROS. ENTERTAINMENT INC.,  )
                                      )
18              Defendant.            )
                                      )
19  _____ )

20

21

22

23

24

25

26

27

28

FILED

2008 DEC 11  PM 2: 15

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1    Plaintiffs Serendip LLC and Wendy Carlos, by their
2  undersigned attorney and for their Amended Complaint for copyright
3  infringement and related claims, allege as follows:

4  **JURISDICTION AND VENUE**

5    1.    This Court has original and exclusive jurisdiction of this
6  action for copyright infringement pursuant to 17 U.S.C. § 101 *et seq.*
7  under 28 U.S.C. § 1338(a), and supplemental jurisdiction of the
8  related state law claims arising from the same controversy under 28
9  U.S.C. § 1367(a).

10    2.    Venue is proper in this district under 28 U.S.C. § 1391(b)
11  and 28 U.S.C. § 1400(a) because all Defendants reside in the District.

12  **PARTIES**

13    3.    Plaintiff Serendip LLC  (hereinafter "Serendip") is a
14  limited liability company formed under the laws of the State of New
15  York, with its principal place of business in New York. Serendip is the
16  successor in interest to previous entities which entered into
17  agreements on behalf of Wendy Carlos with respect to her music.

18    4.    Plaintiff Wendy Carlos (hereinafter sometimes referred to
19  as "Carlos") is a music composer and recording artist residing in the
20  State of New York and is a member of Serendip.

21    5.    Upon information and belief, defendant Warner Bros.
22  Entertainment, Inc., acting directly and through its subsidiaries,
23  (collectively hereinafter "Warner") is a Delaware corporation with a
24  principal place of business in this District. Warner is the successor in
25  interest to various motion picture production companies which
26  entered into agreements regarding Wendy Carlos's music. Warner is
27  the copyright owner and distributor of the motion pictures "A

Clockwork Orange" and "The Shining", and distributes these motion pictures, along with related material, for sale or rental to the public on home video devices in this District, in the State of New York and worldwide.

## BACKGROUND FACTS
### Music for A Clockwork Orange

6.     Wendy Carlos arranged, orchestrated, performed and recorded music of J.S. Bach on the 1968 album "Switched-On Bach", which served to propel Carlos and electronic music with the Moog synthesizer into the public consciousness.  This album won three Grammy Awards and spent many months on the lists of top selling classical and pop albums. After a follow-up album, "The Well-Tempered Synthesizer", which further demonstrated the unmatched style and quality of Carlos's music, Stanley Kubrick  became interested in obtaining the services of Carlos to provide music for Kubrick's motion picture "A Clockwork Orange", theatrically released by Warner in 1971. An agreement was negotiated with the motion picture production company (hereinafter referred to as the "ACO Agreement", attached as Exhibit A). Pursuant to the ACO Agreement, in addition to two pieces of music which were already mostly completed ("Existing Music"), Carlos composed or arranged, orchestrated, performed and recorded seven pieces of music ("New Music") over a period of many months for specific use in the soundtrack and trailer of the motion picture, and ultimately six pieces were actually used in the soundtrack and trailer.

7.     Under the ACO Agreement, which was of a form common in Europe for low and modest budget motion pictures, Carlos retained

1   full ownership of the music copyrights, but undertook the entire cost

2   and risk of the music production. The  compensation for the music

3   was expected to come from exploitation of the motion picture and its

4   soundtrack, through performing rights fees payable by third parties

5   upon public performance of the motion picture, including theatrical

6   exhibition outside the United States and exhibition on television, and

7   by royalties payable by the motion picture production company upon

8   forms of exploitation other than public performance, including sale to

9   the public of devices containing the music soundtrack.

10       8.      Had "A Clockwork Orange" been a theatrical failure,

11   Wendy Carlos's compensation might have been little more than the

12   minimal fee (about $1200) paid for synchronization rights, which

13   was calculated to satisfy a legal obligation, and bore no relationship

14   to the actual expense of the music production or the value of the

15   licenses granted. However, the motion picture was successful

16   (making the American Film Institute's list of 100 greatest motion

17   pictures), and is also well known for its music soundtrack (appearing

18   on lists of the best motion picture soundtracks). Serendip receives far

19   more license requests for Carlos's music from "A Clockwork Orange",

20   and this music is more often imitated or copied, than any other music

21   by Wendy Carlos. Upon information and belief, video users on

22   YouTube, and elsewhere on the Internet, attempt to use Carlos's

23   music from "A Clockwork Orange" for their own purposes at least as

24   often as they make use of the actual images from the motion picture.

### Music for The Shining

26       9.      When Wendy Carlos learned that Stanley Kubrick's latest

27   project might be based upon Stephen King's novel "The Shining",

1   Carlos composed or arranged, orchestrated, performed and recorded
2   music at her own instigation and expense during the period of 1977
3   through December 1979, and periodically provided demonstration
4   tapes, including music previously recorded for other purposes, to
5   Kubrick in an attempt to induce her engagement as a composer for
6   the music soundtrack of Kubrick's motion picture. During this period,
7   Wendy Carlos had no agreement of any kind with Kubrick, his
8   production company or Warner to provide music for this motion
9   picture. "The Shining" was theatrically released by Warner in 1980
10  without any of Carlos's demonstration music, although one such
11  composition was used by Warner in the trailer for the motion picture.
12  Pursuant to an agreement entered into with the motion picture
13  production company effective as of January 25, 1980, Carlos
14  composed or arranged, orchestrated, performed and recorded two
15  pieces of music and other musical elements which were used in the
16  soundtrack of the motion picture and are not the subject of this
17  action. However, a letter rider to the agreement, which lacked
18  consideration, and purported to retroactively define music composed
19  or arranged, orchestrated, performed and recorded by Carlos as
20  demonstration music prior to the agreement as a work for hire under
21  "The Shining" agreement, is void *ab initio*.

22              **SERENDIP'S COPYRIGHTS**

23          10.   Wendy Carlos's master sound recordings for "A Clockwork
24  Orange" were fixed in a phonorecord and registered for copyright on
25  June 2, 1972. Serendip, now the owner of Carlos's master recordings,
26  renewed the copyright in the Clockwork Orange sound recording,
27  effective December 29, 2000, Registration Certificate RE-851992.

11.     Unpublished versions of Wendy Carlos's music for "A Clockwork Orange" were originally registered for copyright on December 8, 1971 and April 24, 1972, Registration Certificates EU297049, EU297050, EU297051 and EU396787. The music and master sound recordings for Carlos's complete score music, including music which was not used in the motion picture, as published in a phonorecord, were registered by Serendip for copyright on November 27, 2007, Registration Certificates PA-1590608 and SR-610074 (copies attached in Exhibit B).

12.     The music and master sound recordings of Wendy Carlos's demonstration music for "The Shining" were published in a phonorecord on May 24, 2005, and registered for copyright by Serendip on November 12, 2007. Registration Certificate SR-610073 (copy attached in Exhibit B).

13.     Serendip is the owner of the copyrights in Wendy Carlos's sound recordings and music relevant to the present claims of this action. Serendip has never assigned the copyrights in such recordings and music to any other entity.

## FIRST CLAIM

### (Copyright Infringement or Breach of Contract)

14.     At sometime subsequent to the theatrical release of "A Clockwork Orange", and without notice to Wendy Carlos or Serendip or any entity connected with Carlos, Warner began to sell or rent to the public copies of the motion picture containing the music soundtrack with Carlos's music in one or more home video formats. However, the ACO Agreement provided only for synchronization rights, and public performance rights with respect to the use of

5

Carlos's music in connection with the motion picture and its trailers without further compensation to Carlos, and did not include the separate right to reproduce and distribute home video copies to the public.

15.    Reproduction and distribution of home video copies of the motion picture containing the music soundtrack does not involve public performance of the works and no fees are payable by third parties to the music composer or publisher for such rights. In fact, all home video devices distributed by Warner contain a prominent notice that they may not be used for public performance. Under the ACO Agreement, the only consideration paid was specifically limited to the synchronization rights, and no consideration was paid for home video copies and distribution rights.

16.    Warner has infringed Serendip's exclusive rights under 17 U.S.C. § 106 by reproducing the motion picture containing the music soundtrack with Carlos's music in copies in one or more home video formats, including digital downloads, and distributing such copies to the public by sale or rental.

17.    Alternatively, Warner obtained the right under the ACO Agreement to reproduce and distribute copies to the public of albums containing the music soundtrack in exchange for the payment of royalties. "Albums" are defined by the agreement to include "any device where sound is combined with pictures." Accordingly, as home video devices constitute a "device where sound is combined with pictures", and pursuant to copyright law at the time of video release, a copy of the motion picture "A Clockwork Orange" constitutes a copy of Wendy Carlos's music contained in the soundtrack, in order not to

constitute copyright infringement, the home video devices must be treated as "albums" and royalties must be paid under the agreement.

18.   Warner has never paid Serendip, or any predecessor, royalties for sale or rental of home video devices containing Wendy Carlos's music.

19.   Serendip notified Warner that distribution of home video copies of Wendy Carlos's music infringes Serendip's copyrights, unless Warner pays the royalties provided under the ACO Agreement for sales of "albums", or negotiates a new royalty arrangement consistent with the agreement. Warner has refused to cease its acts or to pay such royalties.

20.   Warner's exploitation of Wendy Carlos's music in home video devices has resulted in profits to Warner and deprived Serendip of revenue to which it is entitled.

21.   By reason of Warner's foregoing willful acts of copyright infringement or breach of contract, Serendip has been damaged by an amount to be determined at trial, but in no event less than $2,000,000.

22.   Serendip has suffered injury as the result of the Warner's acts of infringement that are irreparable in nature. Serendip is without an adequate remedy at law.

## SECOND CLAIM

### (Unjust Enrichment)

23.   Serendip realleges each and every allegation set forth in Paragraphs 1 through 22, inclusive, and incorporates them herein by this reference.

24.   As a result of Warner's exploitation of Wendy Carlos's

1   music in home video devices without consideration or payment to
2   Serendip or its predecessor, Serendip has been unjustly deprived of
3   the opportunity arising from assumption of the substantial cost and
4   risk of producing the music and of the full benefit of Warner's
5   exploitation of.Serendip's copyrights, and Warner has been unjustly
6   enriched at Serendip's expense.

7      25.    By reason of the foregoing, Serendip has been injured in
8   an amount to be ascertained at trial, but in no event less than
9   $2,000,000.

10     26.    Furthermore, Warner's conduct was willful, wanton,
11  reckless, or malicious, entitling Plaintiff to the award of exemplary
12  damages.

### THIRD CLAIM

### (Accounting and Payment of Amount Due)

15     27.    Serendip realleges each and every allegation set forth in
16  Paragraphs 1 through 26, inclusive, and incorporates them herein by
17  this reference.

18     28.    Serendip's predecessor in interest entered into an
19  agreement with Warner's predecessor in interest in which it was
20  agreed that periodic accountings and royalty payments would be
21  made for the sales of albums containing Wendy Carlos's music.

22     29.    Pursuant to the ACO Agreement, the album sales to be
23  accounted for included "any device where sound is combined with
24  pictures." Home video devices constitute a "device where sound is
25  combined with pictures" and an accounting is due for the sales of the
26  same. Furthermore, even if the home video devices are not treated as
27  "albums" under the agreement, compensation is due to Serendip for

sales of home video devices, consistent with Serendip's copyrights and the terms and circumstances of the ACO Agreement.

30.   Warner has distributed, and is continuing to distribute to the present date, home video devices for sale and rental to the public containing Wendy Carlos's music. The amount of such sales and rentals and the amount of royalties due is unknown to Serendip.

31.   An accounting is necessary to show the amount due to Serendip from Warner, and the amount due would be shown by an accounting.

32.   Prior to the commencing this action, Serendip demanded of Warner an accounting of home video sales and rentals and payment of the amount due under the ACO Agreement. Warner has never rendered a full accounting of the actual home video sales, and rentals nor paid to Serendip any of the money Warner was obligated to pay as royalties for such distribution under the agreement.

33.   By reason of the foregoing, Serendip has been injured in an amount to be ascertained by the accounting, but in no event less than $2,000,000.

## FOURTH CLAIM
### (Copyright Infringement)

34.   Serendip realleges each and every allegation set forth in Paragraphs 1 through 13, inclusive, and incorporates them herein by this reference.

35.   Without permission or license from Serendip (or any predecessor), Warner has used music by Wendy Carlos in the current Stanley Kubrick – Warner Home Video Directors Series home video release, as well as in individual titles sold separately, and in previous

home video releases which are still being sold. In addition, some of the videos were exhibited on television, or in theaters, without licenses for Carlos's music and without proper listings of the copyright status and music publisher in the music cue sheets.

36.    The following unlicensed uses by Warner of music by Wendy Carlos in video productions sold and sometimes publicly exhibited by Warner constitute infringement of one or more of Serendip's copyrights:

    a.    "Valse Triste", arranged and performed by Wendy Carlos in 1978, used in "The Making of The Shining" documentary production, exhibited on television, without proper listing in the music cue sheet, and sold by Warner in home video devices released in 2007 and previously;

    b.    "Title Music From A Clockwork Orange", "Theme From A Clockwork Orange", "William Tell Overture", "March From A Clockwork Orange" and "Clockworks", composed or arranged and performed by Wendy Carlos in 1971 for "A Clockwork Orange", used in "Stanley Kubrick: A Life In Pictures" documentary production, without credit or proper listing in music cue sheet, exhibited on television, and sold by Warner in home video devices released in 2007 and previously;

    c.    "Title Music From A Clockwork Orange", composed, arranged and performed by Wendy Carlos in 1971, used in "Great Bolshy Yarblokos!: Making A Clockwork Orange" documentary production, synched to "A Clockwork Orange" picture excerpts, not in the original

1    context, without proper listing in music cue sheet, and

2    sold by Warner in home video devices released in 2007;

3    d.    Third party performances, solicited by Warner, of "Theme

4    From A Clockwork Orange', composed by Wendy Carlos,

5    "March From A Clockwork Orange" and "William Tell

6    Overture", arranged by Wendy Carlos in 1971 for "A

7    Clockwork Orange", used in "Still Tickin': The Return of

8    Clockwork Orange", synched to picture in the original "A

9    Clockwork Orange" context and otherwise, without proper

10    credit or listing in music cue sheet, and sold by Warner in

11    home video devices released in 2007;

12    e.    "Orange Minuet" and "Country Lane", composed and

13    performed by Wendy Carlos in 1971, and "Chase Music"

14    and "Valse Triste", composed or arranged and performed

15    by Wendy Carlos in 1978, used in "Wendy Carlos,

16    Composer", without credit or proper listing in music cue

17    sheet, sold by Warner in home video devices released in

18    2007;

19    f.    "Clockworks", composed and performed by Wendy Carlos

20    in 1978, used in "The Shining" trailer, without proper

21    listing in music cue sheet, sold by Warner in home video

22    devices released in 2007 and previously;

23    g.    "William Tell Overture", arranged and performed by

24    Wendy Carlos in 1971, used in "A Clockwork Orange"

25    trailer, without proper listing in music cue sheet and sold

26    by Warner in home video devices released in 2007 and

27    previously;

11

h.     "Title Music From A Clockwork Orange", composed, arranged and performed by Wendy Carlos in 1971, used as menu music in home video devices sold by Warner released in 2007; and

i.     "Title Music From A Clockwork Orange" and "March From A Clockwork Orange",  composed or arranged and performed by Wendy Carlos in 1971, used in "Oh Lucky Malcolm" documentary production, without credit or proper listing in music cue sheet, and publicly exhibited at film festival on behalf of Warner for admission charge.

37.     Serendip notified Warner prior to the release of the 2007 "Stanley Kubrick – Warner Home Video Directors Series" home video set, as well as release of the individual titles contained in the set, that unlicensed use of Wendy Carlos's music therein would infringe Serendip's copyrights, but Warner refused to cease its acts.

38.     By reason of Warner's foregoing willful acts of copyright infringement, Serendip has been damaged by an amount to be determined at trial, but in no event less than $2,000,000.

39.     Serendip has suffered injury as the result of the Warner's acts of infringement that are irreparable in nature. Serendip is without an adequate remedy at law.

## FIFTH CLAIM

## (Violation of  New York Civil Rights Law §§ 50 & 51)

40.     Wendy Carlos realleges each and every allegation set forth in Paragraphs 1 through 9, inclusive, and incorporates them herein by this reference.

41.     In 2000, Carlos agreed to be video taped so as to appear in

1  person in the motion picture "Stanley Kubrick: A Life In Pictures",

2  which was released in 2001 by Warner as part of the Extra Features

3  for the "Stanley Kubrick Collection" home video set. The written

4  permission given by Carlos to the director was expressly limited to

5  this specific use on video.

6      42.   In January 2007, the director of this picture requested

7  that Carlos approve the incorporation in another video of unused

8  material from the 2000 video taping, while expressly acknowledging

9  that her prior consent did not authorize such additional use. Carlos

10  expressly denied approval and the director acknowledged the denial.

11  The director could not assign to Warner any greater rights to this

12  material than he had obtained from Carlos in the first place.

13      43.   Despite the lack of written consent from Carlos, Warner

14  included the video entitled "Wendy Carlos, Composer", and used her

15  name in the cover credits, in the 2007 individual and box set home

16  video releases, of "The Shining" and "Stanley Kubrick – Warner

17  Home Video Directors Series", sold in the State of New York.

18      44.   Warner used Carlos's name in the credits for "Great

19  Bolshy Yarblokos!: Making A Clockwork Orange" in connection with

20  music which was actually composed, arranged and performed by

21  other persons. This feature was included " in the 2007 individual and

22  box set home video releases of "A Clockwork Orange" and "Stanley

23  Kubrick – Warner Home Video Directors Series", sold in the State of

24  New York.

25      45.   The foregoing uses in New York by Warner in trade and

26  advertising of Carlos's name, picture and voice were without Carlos's

27  written consent.

13

46.    Warner was given written notice on September 24, 2007, prior to the release to the public by Warner of the home video devices, that the video "Wendy Carlos, Composer" was unauthorized by Carlos, and subsequently that music was improperly credited to Carlos in other home video releases, but Warner refused to withhold or withdraw the home video devices from release.

47.    By engaging in these acts, Warner has violated New York Civil Rights Law §§ 50 & 51 and Wendy Carlos is entitled to the prescribed remedies.

48.    By reason of the foregoing, Carlos has been and will be irreparably harmed and damaged. Carlos is entitled to injunctive relief and monetary damages as found by the jury. Carlos has no adequate remedy at law.

49.    Furthermore, Warner's conduct was done knowingly and with willful disregard of Carlos's rights, entitling Carlos to the award of exemplary damages.

## SIXTH CLAIM

### (Violation of New York General Business Law § 368-d, California Business and Professions Code § 14330 and Similar Laws of Other States)

50.    Serendip realleges each and every allegation set forth in Paragraphs 1 through 49, inclusive, and incorporates them herein by this reference.

51.    Wendy Carlos's name is inherently distinctive and has served for many years as a strong and famous trademark to identify her unique music and music services to the consuming public. In addition, her name has acquired secondary meaning as a source of

1  high quality music in both the recording and motion picture
2  industries. Serendip is the exclusive licensor of Wendy Carlos's music
3  and the use of her name as a trademark in connection therewith.
4  Serendip and its licensees have invested substantial sums and effort
5  in promotion of Wendy Carlos's name and music.

6      52.    Warner used Wendy Carlos's name and music in an
7  unprofessional manner in "Great Bolshy Yarblokos!: Making A
8  Clockwork Orange" documentary production, poorly synched to "A
9  Clockwork Orange" picture excerpts, not in the original context, while
10  replacing other Carlos music actually used in the original motion
11  picture. Warner also used Carlos's name in the credits of the same
12  documentary in connection with music which was not hers. Warner
13  had another person make new performances, and used his name as
14  the sole music credit in connection with these inferior performances,
15  of Carlos's original music composition and arrangements in "Still
16  Tickin': The Return of Clockwork Orange", synched to picture in the
17  original "A Clockwork Orange" context and otherwise. The manner
18  and context of Warner's use of Carlos's name and music have blurred
19  her name's product identification and have tarnished the affirmative
20  associations her name has come to convey as a mark owned by
21  Serendip.

22      53.    Warner's use of Wendy Carlos's name in connection with
23  inferior uses of her music, in connection with another composer's
24  music, and use of another person's name in connection with Carlos's
25  music has caused a likelihood of injury to Carlos's business
26  reputation and dilution of the distinctive quality and goodwill of
27  Carlos's name and music and the value of Serendip's proprietary

1   rights therein. This use by Warner of Wendy Carlos's name is in

2   violation of New York General Business Law § 368-d, California

3   Business and Professions Code § 14330, similar laws of other states,

4   and of Serendip's rights at common law.

5       54.   By reason of the foregoing, Serendip has been and will be

6   irreparably harmed and damaged and is entitled to injunctive relief.

7   Serendip has no adequate remedy at law.

8                        **SEVENTH CLAIM**

9                      **(Unfair Competition)**

10      55.   Serendip realleges each and every allegation set forth in

11  Paragraphs 1 through 54, inclusive, and incorporates them herein by

12  this reference.

13      56.   Warner's conduct alleged above in using Wendy Carlos's

14  name in bad faith for purposes of trade without permission of, or

15  compensation to, Serendip, and use of another person's name in

16  connection with Carlos's music constitutes misappropriation of

17  Serendip's property rights and unfair competition within the

18  meaning of the common law and statutes of the various states in

19  which Warner is doing business.

20      57.   These wrongful acts by Warner have proximately caused

21  and will continue to cause Serendip substantial injury, including,

22  without limitation, loss of potential customers, dilution of goodwill,

23  confusion of existing and potential customers, injury to Carlos's

24  reputation, and diminution of the value of her services on behalf of

25  Serendip.

26      58.   By reason of the foregoing, Serendip has been injured in

27  an amount to be ascertained at trial, but in no event less than

1 | $2,000,000.

2 |     59.   Furthermore, Warner's conduct was willful, wanton,

3 | reckless, or malicious, entitling Serendip to the award of exemplary

4 | damages.

5 | **EIGHTH CLAIM**

6 | **(Breach of the Covenant of Good Faith and Fair Dealing)**

7 |     60.   Serendip realleges each and every allegation set forth in

8 | Paragraphs 1 through 59, inclusive, and incorporates them herein by

9 | this reference.

10 |     61.   California law  implies a covenant of good faith and fair

11 | dealing in all contracts between parties assumed to be made in the

12 | State of California, as provided by the ACO Agreement, and as also

13 | does New York law for contracts actually made and performed in the

14 | State of New York.

15 |     62.   Warner failed to account to, or give notice or consideration

16 | to, Serendip for the home video devices containing Wendy Carlos's

17 | music sold by Warner pursuant to the ACO Agreement, which

18 | provided only for public performance rights without further

19 | compensation to Carlos, thereby unjustly depriving Serendip of the

20 | opportunity arising from the assumption of the full cost and risk of

21 | producing the music, and of the expected benefit of Warner's

22 | exploitation of Serendip's copyrights, consistent with the terms and

23 | circumstances of the agreement.

24 |     63.   Warner induced another person to make performances of

25 | Wendy Carlos's musical works, made pursuant to the ACO

26 | Agreement, for purposes of the video release of "Still Tickin': The

27 | Return of Clockwork Orange", and after Carlos's works had been

used in the television release, without even attempting to license Carlos's original music. Warner repeatedly accepted representations from video productions containing clips from "A Clockwork Orange" using Carlos's music without licenses, contending that the music is in the public domain, when Warner knew that the music was made by Carlos pursuant to the ACO Agreement, thereby unjustly depriving Serendip of the expected benefit of Warner's exploitation of Serendip's copyrights, consistent with the terms of the agreement..

64.     Warner's foregoing actions have violated the implied covenant of good faith and fair dealing contained in the ACO Agreement and have caused damage to Serendip in an amount to be determined at trial, but in no event less than $2,000,000.

65.     Furthermore, Warner's conduct was willful, wanton, reckless, or malicious, entitling Serendip to the award of exemplary damages.

WHEREFORE, Serendip and Wendy Carlos demand relief against Warner, as follows:

(a)     that, pursuant to 17 U.S.C. § 502, Warner be preliminarily and permanently enjoined from infringing Serendip's copyrights;

(b)     that, pursuant to 17 U.S.C. § 503, the Court order the impounding of all copies made in violation of Serendip's exclusive rights under copyright;

(c)     that Warner be ordered to provide an accounting of all home video devices and digital downloads sold and rented with respect to the motion picture "A Clockwork Orange" and all other home video devices which infringe Serendip's or Carlos's rights;

(d)    that, pursuant to 17 U.S.C. § 504, Serendip be awarded its actual damages and the profits of Warner that are attributable to the Warner's acts of copyright infringement as found by the jury, but in no event less than $2,000,000, or, upon Serendip's election, statutory damages;

(e)    that, pursuant to NY General Business Law § 368-d, CA Business and Professions Code § 14330 and similar laws of other states, Warner be preliminarily and permanently enjoined from using Wendy Carlos's name in violation of said laws;

(f)    that, pursuant to NY Civil Rights Law §§ 50 & 51, Warner be preliminarily and permanently enjoined from using Wendy Carlos's name, picture and voice in violation of said laws;

(g)    that, pursuant to NY Civil Rights Law § 51, Wendy Carlos be awarded compensatory damages as found by the jury;

(h)    that, pursuant to NY Civil Rights Law §§ 50 & 51, Wendy Carlos be awarded exemplary damages;

(i)    that Serendip be awarded compensatory damages as found by the jury with respect to Warner's acts of breach of contract, unjust enrichment, unfair competition, and breach of the covenant of good faith and fair dealing, but in no event less than $2,000,000;

(j)    that Serendip be awarded exemplary damages;

(k)    that, pursuant to 17 U.S.C. § 505, Serendip be awarded its costs and attorneys' fees;

(l)    that Wendy Carlos be awarded her costs and attorneys' fees; and

(m)    such other and further relief to Serendip and Wendy Carlos as this Court may deem to be just and proper.

Dated:        December 8, 2008

By: _____
       s/

**Annemarie Franklin**
Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure.

Dated:        December 8, 2008

By: _____
       s/

**Annemarie Franklin**
Attorney for Plaintiffs

## VERIFICATION

Wendy Carlos hereby declares under penalties of perjury of the laws of the United States of America as follows:

1.    that I am a Plaintiff and a member of Serendip, another Plaintiff in this action; and

2.    that I have read the annexed Complaint and know of the contents thereof and the same are true to my knowledge, except those matters therein which are stated on information and belief, and as to these matters, I believe them to be true.

Dated:        December 8, 2008

_____
    s/

**Wendy Carlos**

*Clarkwright*

June 1, 1971 *(signed)*

TRANS-ELECTRONIC MUSIC PRODUCTIONS, INC. (hereinafter referred
133 West 87th Street                    to as "TEMPI")
New York, N. Y. 10024

        Attn:  Mrs. Rachel Elkind

Gentlemen:

        You represent and warrant that you are the owners of
or control all necessary rights in and to master recordings of
the musical selections entitled "Timesteps" and "Beethoven's
Ninth Symphony" (hereinafter called "Existing Music") as
arranged and recorded by Walter Carlos utilizing the so-called
"Moog Synthesizer."

        Polaris Productions, Inc. (herein called "Polaris")
is producing a motion picture photoplay presently entitled "A
Clockwork Orange" (herein called the "Photoplay") and desires
to obtain the right to re-record the performances embodied in
said master recordings (hereinafter called "Masters") and in
addition desires to obtain from you new and original musical
compositions written and arranged by Walter Carlos and performed
by Walter Carlos on the Moog Synthesizer, for use in and in
connection with the sound track of the Photoplay.

        This will confirm the agreement between you and Polaris
as follows:

        1.  At your sole cost and expense and on dates to be
mutually agreed upon by you and Polaris, you agree to cause
Walter Carlos to write and prepare arrangements of new and
original musical selections as Polaris may require and to per-
form on the Moog Synthesizer and record on master recordings
said new and original musical selections.  The said new and
original musical compositions to be written, arranged and

CC.  *Boyd 8-71*
*10-28-71*
*Cramston*
*1-11-72*

Ex. A

formed on the Moog Synthesizer by Walter Carlos are hereinafter referred to as "New Music."

2.  You hereby give and grant to Polaris and Polaris shall have the right, but not the obligation, to re-record the performances from the Masters of the Existing Music and the New Music on the sound track of the Photoplay and Polaris shall have the sole and exclusive synchronization rights to be exercised in connection with the re-recordation of the Existing Music and the New Music, or any part or parts thereof, in the Photoplay, and its air, screen and television trailers and furthermore the unqualified and unrestricted right to publicly perform the same everywhere, for profit or otherwise and by all means and methods now or later known, free of any obligation to pay any fees of any kind to Walter Carlos or any other person or corporation.

3.  You agree to make available to Polaris magnetic tape copies of the Masters of the Existing Music and the New Music suitable for use in transferring the performances of the Existing Music and the New Music to the sound track of the Photoplay.

4.  You represent and warrant that you have all necessary rights in and to results and proceeds of the services of Walter Carlos and any other person or corporation who rendered services in connection with the writing, arranging and recording of the said Masters and you shall bear and be solely responsible for the payment of any and all costs of any kind and nature arising out of the manufacture and production of the said Masters.

5.  Polaris shall bear and shall be solely responsible for the payment of all costs arising out of the re-recording, assembly and handling of the said Masters and the transferring of the Existing Music and the New Music from the Masters to the

sound track of the Photoplay.

    6.  In addition to the aforesaid right to use the
Masters to the Existing Music and the New Music for and in con-
nection with the sound track of the Photoplay, you hereby give
and grant to Polaris for an unlimited period of time the non-
exclusive license, privilege and right (a) to make master
recordings emboyding all or· protions of the sound track of
the Photoplay and any portion of the Existing Music or New Music
written hereunder actually used in the sound track of the Photoplay
as finally released, and to manufacture, distribute, publically
perform, issue and sell so-called long-playing sound track recordings
(hereinafter referred to as "Albums") of the music contained in the
score of the Photoplay in all forms and devices for the reproduction
of sound whether or not now known or contemplated (and including
any device where sound is combined with pictures) throughout the
world and the universe; and (b) to use the name, likeness and
biography of Walter Carlos in connection with the advertising,
publicizing or sale of the Albums, said right to be non-
exclusive.

    7.  Polaris, its assignees and licensees shall bear
and be solely responsible for the payment of all costs arising
out of the manufacture, production, distribution and release
of the Albums, including the cost of the transfer of the sound
track of the Photoplay to such master recordings used for the
production of the Albums as shall be prepared by Polaris or its
assignees and licensees and for. delivery, assembly and handling
of the sound track of the Photoplay for such purposes.

    8.  In the event that Polaris shall find it necessary
to and shall make re-recordings of all or any portion of the
sound track of the Photoplay, you hereby grant to Polaris the
right to make such re-recordings as shall be necessary, provided
that Polaris shall make all payments required to be made to any
persons or corporations rendering such services in connection

with such re-recordings.

9.   In consideration of the license and rights herein granted to Polaris by you and for all your undertakings pursuant hereto, Polaris agrees to pay to you the following compensation and royalties with respect to the Existing Music, the New Music and the said Albums:

(a)   To pay to you as a synchronization fee for the right to use the Existing Music and the New Music in and in connection with the sound track of the Photoplay the following amounts:

(i)   The sum of $500.00 for up to 30 minutes of New Music;

(ii)   The sum of $50.00 per minute for each minute of the Existing Music actually used in the sound track of the Photoplay as finally released.

(b)   To pay to you for and on account of the exploitation in the form of Albums of the Existing Music and the New Music, royalties as follows:

(i)   A royalty of 10% of the retail list price (excluding taxes and the recording company's standard charges for containers in which such Albums are sold, if any) on 90% of all such Albums manufactured and sold in the United States, its territories and possessions.  If any Existing Music or New Music by Walter Carlos in the sound track of the Photoplay is included with other musical compositions of the Photoplay or with any other recordings not contained in the Photoplay, then instead of the royalties set forth above you shall be entitled to receive such pro rata share of such royalties in the proportion that the playing time of the Existing Music and New Music performed by Walter Carlos bears to the total playing time of such record Albums.

- 4 -

Ex. A

(ii)  A royalty for Albums sold outside the
United States, its territories and possessions of one-half of
the royalty hereinbefore specified based upon the retail list
price (excluding taxes and the recording company's standard
charges for the cost of containers in which such Albums are
sold, if any) in the country of manufacture, the United States,
England, or the country of sale, at Polaris's election, on 90%
of all such Albums manufactured and sold, such royalties to be
computed in the national currency of the country to which the
list price so elected applies.  Such royalties hereunder shall
be due and payable only after payment has been received by
Polaris in the United States and shall be paid at the same rate
of exchange as Polaris was paid.  If Polaris does not receive
payment in the United States in dollars and elects to accept
payment in a foreign currency, Polaris may deposit to your
credit, and at your expense, in such currency in a depository
selected by you, your royalties based upon payments so
received by Polaris in a foreign currency as royalties hereunder
and shall notify you thereof promptly.  Such deposit as stated
above shall fulfill Polaris's obligation hereunder as to Album
sales as to which the royalties so deposited shall be applicable.

(iii)  As to Albums sold through mail order
record clubs or similar sales plans or devices and as to Albums
sold for promotional, sales incentive or educational purposes or
in the form of pre-recorded tape (in reel-to-reel, cartridge or
other form), a royalty of one-half (1/2) the royalty rate
otherwise payable; provided, however, that no royalty shall be
payable with respect to Albums given to members of record clubs
as "bonus" or "free" Albums as a result of joining the club,
obtaining new members or purchasing a required number of albums.
No royalty shall be payable with respect to Albums given away

- 5 -
Ex. A

or furnished on a no-charge basis to disc jockeys, radio stations, dealers or others, or sold as "cut-outs" after the listing of such album has been deleted from the catalogue of Polaris, its subsidiaries, affiliates or licensees.

 (b)  In computing the number of Albums manufactured and sold hereunder, Polaris shall have the right to deduct returns and credits of any nature, including, without limitation, those on account of 100% or lesser return privilege, defective merchandise, exchange privilege, promotional credits, errors in billing, usable overstock and errors in shipment.

 (c)  Statements shall be rendered and payments shall be made on account of royalties, if any, accruing to you hereunder on a semi-annual basis after the release of any Album containing the Existing Music or New Music. The semi-annual periods of six (6) consecutive months each shall be from January 1st to June 30th and July 1st to December 31st. Each statement shall be rendered within the period of sixty (60) days following the close of the semi-annual period to which it relates and shall be accompanied by a remittance of the amount accrued to you on the basis of receipts during such semi-annual period as indicated in such statement. Any statement rendered shall become final and binding upon you unless specific objection in writing is made within twelve (12) months from the date the same shall be delivered to you.

 10.  Polaris shall have the right to and shall include on the Album containers credit to Walter Carlos in such form, size and location as Polaris shall determine in its sole discretion.  However, in the event any other composer or performer shall receive credit on the front cover, a credit line in the same size typeface shall also be given to Walter Carlos.  In addition, the

- 6 -
Ex. A

credit line on the liner note shall read "Composed, arranged and performed by Walter Carlos.  Produced by Rachel Elkind for TEMPI."

11.  Notwithstanding the sole and exclusive synchronization rights in and to the Existing Music and the New Music granted to Polaris herein for use in the Photoplay, it is understood and agreed that you may grant the right to Columbia Record Corporation or another person, firm or corporation to use the Existing Music or the New Music in record Albums to be manufactured and distributed by Columbia Record Corporation or another person, firm or corporation; provided, however, that such other Albums containing all or any part of the Existing Music or the New Music shall not be released anywhere in the world earlier than four (4) months from and after the initial distribution in the United States of the Albums hereunder. In connection with other Albums issued by Columbia Record Corporation or any other person, firm or corporation, it is understood and agreed that any designation or reference to "A Clockwork Orange" in publicity or advertising on the jackets or Album covers of such Albums shall be subject to Polaris's right of prior written approval, which approval shall not be unreasonably withheld.

12.  This agreement, its validity, construction and effect, shall be governed by the laws of the State of California applicable to agreements made and to be performed therein.

13.  Any notices which you or Polaris may desire or may be required to give to the other in connection herewith shall be given by addressing the same to you at the address first above written and to Polaris at 9777 Wilshire Boulevard, Suite 918, Beverly Hills, California 90212, or at such other address as may be designated by you or Polaris by written notice and by depositing the same so addressed, postage prepaid, in

the United States mail or by delivering the same, toll prepaid, to a telegraph or cable company or by delivering the same personally to one of your officers or a Polaris officer.

14.   Polaris shall have the right to assign this agreement or all of its rights hereunder to Warner Bros. or any Kinney affiliated record company; provided, however, that any such assignment shall be contingent upon Polaris causing such assignee to assume Polaris's obligations hereunder.

15.   You represent and warrant that you have the full right and power to make this agreement and to grant the rights herein granted to Polaris and that you have not heretofore nor will you hereafter do any act or thing which will or may tend to derogate from, impair, prejudice or diminish any right or license granted Polaris hereunder.  You agree to indemnify and hold Polaris and its officers, directors, employees, successors and assigns (herein "Indemnitees") harmless from and against any and all loss, cost, damage, liability and/or expense suffered or incurred by or threatened against said Indemnitees, or any of them (including reasonable attorney's fees) arising from or related to any breach or alleged breach by you of any agreement, representation or warranty hereunder.

16.   If required by Polaris, you agree to require Walter Carlos and Rachel Elkind to report to Polaris at a site in England for consultation and he shall be required to render services hereunder in composing the New Music at TEMPI's studios in New York.  Polaris agrees to provide Walter Carlos and Rachel Elkind with round-trip transportation from New York City to the site in England and agrees to pay or reimburse Walter Carlos and Rachel Elkind their reasonable living expenses while away from New York pursuant to the request of Polaris hereunder.

17.   This agreement sets forth the entire agreement

between the parties with respect to the subject matter hereunder, and no modification, amendment, waiver, termination or discharge of this agreement of any of the provisions hereof shall be binding upon either party unless confirmed by written instrument signed by an officer of the party to be bound.

Please indicate your agreement to the foregoing by signing in the space provided below.

Very truly yours,

POLARIS PRODUCTIONS, INC.

By _____

Agreed and accepted:

TRANS ELECTRONIC MUSIC PRODUCTIONS, INC.

By _____

Agreed and accepted:

_____

WALTER CARLOS

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## PA 1-590-608

**Effective date of registration:**

November 27, 2007

---

## Title

**Title of Work:** CLOCKWORK ORANGE - Wendy Carlos's Complete Original Score

**Contents Titles:** Individual Titles in CLOCKWORK ORANGE - Wendy Carlos's Complete Original Score

Music by Wendy Carlos:

Track:

1. TIMESTEPS, 2. MARCH from A CLOCKWORK ORANGE (Beethoven: Ninth Symphony: Fourth Movement, Abridged), 4. LA GAZZA LADRA (Rossini: The Thieving Magpie, Abridged), 6. NINTH SYMPHONY: Second Movement [Scherzo] (Beethoven), 7. WILLIAM TELL OVERTURE (Rossini, Abridged), 8. ORANGE MINUET

Music by Wendy Carlos & Rachel Elkind;

Track:

3. TITLE MUSIC from A CLOCKWORK ORANGE (from Purcell: Music for the Funeral of Queen Mary), 5. THEME from A CLOCKWORK ORANGE [Beethoviana], 9. BIBLICAL DAYDREAMS, 10. COUNTRY LANE

**Nature of Work:** MUSIC

## Completion/Publication

**Year of Completion:** 1972

**Date of 1st Publication:** January 1, 1978          **Nation of 1st Publication:** United States

## Author

**Author:** WENDY CARLOS

**Author Created:** MUSIC COMPOSITIONS, ARRANGEMENTS & ADAPTATIONS

**Work made for hire:** No

**Citizen of:** United States

**Year Born:** 1939

**Anonymous:** No          **Pseudonymous:** No

■          **Author:** RACHEL ELKIND

          **Author Created:** MUSICAL ARRANGEMENT on tracks 3, 5, 9 & 10

          **Work made for hire:** No

          **Citizen of:** United States

          **Year Born:** 1937

          **Anonymous:** No                                    **Pseudonymous:** No

## Copyright claimant

          **Copyright Claimant:** SERENDIP LLC

                    PO BOX 1024 COOPER STATION, NEW YORK, NY 10276-1024

          **Transfer Statement:** TRANSFER OF ALL RIGHTS BY AUTHOR

## Limitation of copyright claim

          **Material excluded from this claim:** Track 2: Beethoven: Ninth Symphony - Fourth Movement, Track 3: Purcell:
                    Music for the Funeral of Queen Mary, Track 4: Rossini: La Gazza Ladra,
                    Track 6: Beethoven: Ninth Symphony - Second Movement, Track 7: Rossini:
                    William Tell Overture, some previously published music

          **Previously registered:** Yes

          **Previous registration and year:** EU396787     1972

                    EU297049     1971

                    EU297050     1971

                    EU297051     1971

          **Basis of current registration.** This is the first published edition of a work prev. registered as unpublished.

          **New material included in claim:** All other music and arrangements

## Certification

          **Name:** Wendy Carlos

          **Date:** November 7, 2007

          **Correspondence:** Yes

Ex. B
- 2 -



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

**SR 610-074**

**Effective date of registration:**

November 27, 2007

## Title

**Title of Work:** CLOCKWORK ORANGE - Wendy Carlos's Complete Original Score

**Contents Titles:** Individual Titles in CLOCKWORK ORANGE - Wendy Carlos's Complete Original Score

Track:

1. TIMESTEPS, 2. MARCH from A CLOCKWORK ORANGE (Beethoven: Ninth Symphony: Fourth Movement, Abridged), 3. TITLE MUSIC from A CLOCKWORK ORANGE (from Purcell: Music for the Funeral of Queen Mary), 4. LA GAZZA LADRA (Rossini: The Thieving Magpie, Abridged), 5. THEME from A CLOCKWORK ORANGE [Beethoviana] 6. NINTH SYMPHONY: Second Movement [Scherzo] (Beethoven), 7. WILLIAM TELL OVERTURE (Rossini, Abridged), 8. ORANGE MINUET, 9. BIBLICAL DAYDREAMS, 10. COUNTRY LANE

## Completion/Publication

**Year of Completion:** 1998

**Date of 1st Publication:** November 3, 1998    **Nation of 1st Publication:** United States

## Author

**Author:** WENDY CARLOS

**Author Created:** PERFORMANCES; REMIXED SOUND RECORDINGS; ARTWORK; TEXT; SOME AUDIOVISUAL MATERIAL

**Work made for hire:** No

**Citizen of:** United States

**Year Born:** 1939

**Anonymous:** No    **Pseudonymous:** No

## Copyright claimant

**Copyright Claimant:** SERENDIP LLC

PO BOX 1024 COOPER STATION, NEW YORK, NY 10276-1024

**Transfer Statement:** TRANSFER OF ALL RIGHTS BY AUTHOR

## Limitation of copyright claim

**Material excluded from this claim:** RECORDED PERFORMANCES ON TRACKS 1-7 & 10. PHOTOGRAPH
ON BACK COVER OF LINER NOTES

**Previously registered:** Yes

**Previous registration and year:** N2920 / RE    1972
851992

**Basis of current registration:** This is a changed version of the work.

**New material included in claim:** RECORDED PERFORMANCES ON TRACKS 8 & 9; REMIXED SOUND
RECORDINGS FROM SOURCE MATERIALS ON ALL TRACKS;
ARTWORK; TEXT; SOME AUDIOVISUAL MATERIAL

## Certification

**Name:** Wendy Carlos

**Date:** November 7, 2007

**Correspondence:** Yes



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## SR 610-073

**Effective date of registration:**

November 12, 2007

## Title

**Title of Work:** REDISCOVERING LOST SCORES

Individual Titles in REDISCOVERING LOST SCORES

Track:

From "The Shining": 1. Colorado, 2. The Rocky Mountains, 3. Chase Music, 4. Nocturnal Valse Triste, 5. Greeting Ghosties, 6. Horror Show, 7. A Haunted Waltz, 8. Psychic Shout #237, 9. Danny, 10. Heartbeats and Worry, 11. Subliminal Ballroom, 12. Thought Clusters, 13. A Ghost Piano, 14. Visitors, 15. Dark Winds and Rustles, 16. Bumps in the Night, 17. Setting with Medea, 18. Two Polymoog Improvisations, 19. Fanfare and Drunken "Dies" 20. Clockworks, 21. Danny Bells Ascending, 22. Postlude

From "A Clockwork Orange":

23. Stately Purcell, 24. Pop Purcell, 25. Trumpet Voluntary

From UNICEF Films:

26. The Children of Peru, 27. Shanty Town and Farewell, 23. Daycare and the Colonel, 29. Two Distant Walks, 30. Ethiopian Life, 31. Tanzanian Scenes, 32. Three Hopeful Places

## Completion/Publication

**Year of Completion:** 1980

**Date of 1st Publication:** May 24, 2005

## Author

**Author:** WENDY CARLOS

**Author Created:** MUSIC COMPOSITIONS, ARRANGEMENTS, PERFORMANCES, SOUND RECORDINGS, ARTWORK, TEXT

**Work made for hire:** No

**Citizen of:** United States

**Year Born:** 1939

**Anonymous:** No                           **Pseudonymous:** No

| | **Author:** | RACHEL ELKIND |
|---|---|---|
| | **Author Created:** | MUSIC ARRANGEMENT, PRODUCING of PERFORMANCES & SOUND RECORDINGS |
| **Work made for hire:** | | No |
| | **Citizen of:** | United States |
| **Year Born:** | | 1937 |
| **Anonymous:** | | No |

**Pseudonymous:** No

## Copyright claimant

**Copyright Claimant:** SERENDIP LLC

PO BOX 1024 COOPER STATION, NEW YORK, NY 10276-1024

**Transfer Statement:** TRANSFER OF ALL RIGHTS BY AUTHOR

## Limitation of copyright claim

**Material excluded from this claim:** Track 4: Sibelius: Valse Triste, 19: Medieval hymn: Dies Irae, Tracks 23, 24: Purcell: Music for the Funeral of Queen Mary; some previously published music and arrangements

**Previously registered:** No

**New material included in claim:** All other arrangements and music; performance; sound recording; artwork; text

## Certification

**Name:** WENDY CARLOS

**Date:** November 7, 2007

**Correspondence:** Yes