**Annemarie Franklin, Esq.** (CA Bar No. 150734)
E-mail: af102@nyc.rr.com
830 Broadway
P.O. Box 1024 Cooper Station
New York, NY 10276-1024
212-475-1630

7562 Ellis Avenue, Suite A5
Huntington Beach, CA 92648
917-686-7420

**Frederick H. Cohn**
E-mail: fcohn@frederickhcohn.com
61 Broadway, Suite 1601
New York, NY 10006
212-768-1110

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENDIP LLC & WENDY CARLOS,<br><br>Plaintiffs,<br><br>vs.<br><br>WARNER BROS. ENTERTAINMENT INC.,<br><br>Defendant. | Case CV08-07739 RGK (RCx)<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF COUNTER-DEFENDANTS MOTION TO DISMISS COUNTERCLAIM UNDER FRCP 12(b)(6)** |
| WARNER BROS. ENTERTAINMENT INC.,<br><br>Counter-Claimant,<br><br>vs.<br><br>SERENDIP LLC,<br><br>Counter-Defendant. | DATE: April 20, 2009<br>TIME: 9:00 a.m.<br>PLACE: Courtroom 850<br>255 E. Temple St.<br>Los Angeles, CA |

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................... ... 2

PRELIMINARY STATEMENT .................................... .... 4

STATEMENT OF FACTS .................................................. .... 5

SUMMARY OF ARGUMENT ............................................ .... 6

ARGUMENT ........................................................................ .... 7

I WARNER'S COUNTERCLAIM MUST BE DISMISSED BECAUSE WARNER DOES NOT OWN THE COPYRIGHTS IN THE WORKS CREATED BEFORE JANUARY 25, 1980 ........... .... 7

A. Pursuant to the Copyright Act, Copyright in the Works Did Not Vest in Warner ............... ... 7

B. The Agreements Dated January 25, 1980 Did Not Transfer Ownership of the Copyrights in Works on the Demonstration Tape ................ ... 8

C. Warner Does Not Own the Copyrights in "Clockworks" and "Valse Triste" .................... .. 10

II WARNER'S COUNTERCLAIM IS PREEMPTED BY THE COPYRIGHT ACT ............................. .. 11

CONCLUSION ......................................................... .. 15

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)………. ............. 4

*Del Madera Props. V. Rhodes & Gardner, Inc.*, 820 F.2d 973 (9th Cir. 1987) …………………………………. ...........13

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990)…………………………………………………… ............ 9

*Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) ………….. . 6, 13, 14

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 45 (1994)……………………………………. ……… 13

*Gladwell Government Services v. County of Marin*, Case No. 05-17327, 265 Fed. Appx. 624, 2008 U.S. App. LEXIS 2291, 2008 WL 268268 (9th Cir. 2008). ... 6, 8, 10

*Lanard Toys Ltd. v. Novelty Inc.*, 511 F.Supp. 1020 (C.D. Cal. 2007)………………………………………………. ........... 13

*Playboy Enters., Inc. v. Dumas*, 53 F.3d 549 (2d Cir. 1995), *cert denied*, 516 U.S. 1010 1995) ………………. ........ 8, 9

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,969 F.2d 410 (7th Cir. 1992)................................................... ........ 8

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) ……………………………………… . 6, 13-15

**Statutes & Rules**

1976 Copyright Act, 17 U.S.C. §101 ............................ ........... 7

1976 Copyright Act, 17 U.S.C. §102 ............................ .......... 12

1976 Copyright Act, 17 U.S.C. §106 ............................ ......11, 12

1976 Copyright Act, 17 U.S.C. §201(a) ....................... ........... 7

1976 Copyright Act, 17 U.S.C. §201(b) ....................... ............7

1976 Copyright Act, 17 U.S.C. §202 ............................ .............9

1976 Copyright Act, 17 U.S.C. §204(a) ....................... .............9

1976 Copyright Act, 17 U.S.C. §301(a) ....................... ........... 12

1976 Copyright Act, 17 U.S.C. §408(a) ....................... ............11

1976 Copyright Act, 17 U.S.C. §501(b) ....................... ......11, 15

1976 Copyright Act, 17 U.S.C. §504(c)(2) ................... ............14

California Business and Professional Code §17200 ...... ... *passim*

Federal Rules of Civil Procedure Rule 12(b)(6) ........... ... *passim*

**Treatises**

M. Nimmer & D. Nimmer, *Nimmer on Copyright*, §1.01(B)(2)(e) ....................................................... ........... 14

## PRELIMINARY STATEMENT

This case presents a controversy about Defendant and Counter-Claimant Warner Bros. Entertainment Inc. (hereinafter "Warner", including any predecessor in interest) making use of copyrighted music alleged to be owned by Plaintiff and Counter-Defendant Serendip LLC (hereinafter "Serendip", including any predecessor in interest) in various motion picture and home video productions. Serendip filed the Amended Complaint against Warner on December 11, 2008, alleging, *inter alia*, that various uses by Warner of music, composed or arranged, performed and recorded by Wendy Carlos, were unauthorized and constituted copyright infringement. Warner filed an Answer on February 6, 2009, interposing defenses, and a subsequent Counterclaim alleging that Warner owns some of the subject copyrights. The determinative question presented by the Counterclaim is whether Wendy Carlos's recorded musical works "Clockworks" and "Valse Triste" were "made for hire."

Serendip respectfully submits that the answer to the question presented is that the subject musical works were not "made for hire" and Warner has no exclusive interest in the copyrights as a matter of law, and that Serendip is entitled to dismissal of the Counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Because the Counterclaim refers to the January 25, 1980 Letter Agreement, and the Composer Loanout Agreement, which are central to the Counterclaim, this Court may consider the actual documents without transforming this motion to dismiss into one for summary judgment, and Serendip respectfully requests that the Court do so. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

## STATEMENT OF FACTS[1]

Wendy Carlos composed or arranged, performed and recorded pieces of music, which were on a demonstration tape sent to Stanley Kubrick in an attempt to induce her engagement as a composer for the music soundtrack of the motion picture "The Shining." (Counterclaim ¶7, Letter Agreement) Two pieces on the demonstration tape were subsequently used by Warner: "Clockworks" in the trailer for the motion picture, and "Valse Triste" in a documentary "The Making of The Shining." (Answer ¶¶36.a, 36.f.; Counterclaim ¶¶ 7, 8; Letter Agreement: "One of the compositions in said demonstration tape is now included in the trailer.")

The music and master sound recordings of some of Wendy Carlos's demonstration music for "The Shining", including "Clockworks" and "Valse Triste", were published in a phonorecord and registered for copyright in 2007 by Serendip, of which Wendy Carlos is a member. (Counterclaim ¶¶11, 12, 16)

The Counterclaim alleges that Warner owns the subject copyrights, because "Clockworks" and "Valse Triste" were works "made for hire." Warner relies upon the Letter Agreement dated January 25, 1980, to retroactively provide that the existing music on the demonstration tape "shall be deemed included" within the music to be composed pursuant to a concurrent agreement, which was to be "work for hire." (Counterclaim ¶¶5, 7, 8; Letter Agreement)

---

[1] We assume, as we must, for the purposes of this motion, that the facts alleged in the Counterclaim are true, except those controverted by Warner's admissions in the Answer, or by the central documents to which the Counterclaim refers.

## SUMMARY OF ARGUMENT

The copyrights in "Clockworks" and "Valse Triste" did not vest in Warner upon creation of the works, and the copyrights were not transferred to Warner. The works could not be retroactively deemed to be "made for hire" because "[w]orks 'specially ordered or commissioned' can only be made after the execution of an express agreement between the parties." *Gladwell Government Services v. County of Marin*, Case No. 05-17327, 2008 App. LEXIS 2291 (9th Cir. 2008). Exclusive copyright ownership is the prerequisite of Warner's claim, and without it, Warner's counterclaim must fail..

Furthermore, assuming *arguendo* that Warner could establish ownership of an exclusive right under the subject copyrights, Warner's counterclaim that Serendip's alleged acts are "unlawful, unfair and/or fraudulent acts within the meaning of California Business and Professions Code Section 17200" is preempted by the Copyright Act because it does not present any qualitative change from a copyright claim. "To the extent the improper business act complained of is based on copyright infringement, the claim … is preempted." *Sybersound Records, Inc. v. UAV Corp*., 517 F.3d 1137, 1152 (9th Cir. 2008). Moreover, any state tort cause of action regarding the false claiming of authorship is preempted by federal law. *Fisher v. Dees*, 794 F.2d 432, 440 (9th Cir. 1986).

For the reasons discussed herein, Serendip respectfully submits that Warner cannot state a claim to ownership of the copyrights in "Clockworks" and "Valse Triste", and the counterclaim does not state a claim as a matter of law.

## ARGUMENT

## I

## WARNER'S COUNTERCLAIM MUST BE DISMISSED BECAUSE WARNER DOES NOT OWN THE COPYRIGHTS IN THE WORKS CREATED BEFORE JANUARY 25, 1980

Warner cannot sustain the counterclaim because Warner does not own the copyrights in "Clockworks" and "Valse Triste." The copyrights in this pre-existing material did not vest in Warner as a matter of law upon creation of the works, and the copyrights were not transferred to Warner.

### A. Pursuant to Copyright Law, Copyright in the Pre-Existing Works Did Not Vest in Warner

Warner cannot be considered the "author" of any works on the demonstration tape, because those works were not works "made for hire" pursuant to the Copyright Act. Copyright in a creative work vests initially in the author of the work. 17 U.S.C. §201(a). Although, if the work is "made for hire", the employer or other person for whom the work is prepared is considered the author, 17 U.S.C. §201(b), the Copyright Act defines a "work made for hire" as a "work specially ordered or commissioned … if the parties agree in a written instrument signed by them that the work shall be considered a work made for hire …." 17 U.S.C. §101. The plain language of the statute means that a work for hire agreement cannot apply retroactively to pre-existing works.

The Ninth Circuit Court of Appeals recently addressed the question of whether material that pre-dated the contract could be considered a work "made for hire" under the Copyright Act. *Gladwell*

*Government Services v. County of Marin*, Case No. 05-17327, 265 Fed. Appx. 624, 2008 U.S. App. LEXIS 2291, 2008 WL 268268 (9th Cir. 2008). As in the present case, this involved a Rule 12(b)(6) motion to dismiss, while considering a contract referred to in the complaint, which purported to retroactively define pre-existing material as "made for hire." The Court held that "[w]orks 'specially ordered or commissioned' can only be made after the execution of an express agreement between the parties." *Id.*, p. 626. The Court considered previous cases, *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 558-59 (2d Cir. 1995), *cert denied*, 516 U.S. 1010 1995) (which found that the 1976 Copyright Act requires that the parties agree before creation of the work that it will be a work for hire), and adopted the reasoning in *Schiller & Schmidt, Inc. v. Nordisco Corp.*,969 F.2d 410 412-13 (7th Cir. 1992) ("The writing must precede the creation of the property" to qualify as a work-for-hire agreement).

Accordingly, Warner could not acquire copyright ownership in pre-existing material through a work for-hire agreement. *Gladwel*l, 265 Fed. Appx. at 626. Warner thus cannot be considered the "author" of the musical works on the "demonstration tape", all created before the January 25, 1980 Letter Agreement, because those works were not "made for hire", and copyright did not vest in Warner Bros.

**B. The Agreements Dated January 25, 1980 Did Not Transfer Ownership of the Copyrights in Works on the Demonstration Tape:**

Because ownership of the copyright in the works on the demonstration tape did not vest in Warner, Warner could only be the owner if the January 25, 1980 Letter Agreement somehow

transferred the copyright to Warner. A transfer of copyright ownership is not valid unless it is documented in a signed writing. 17 U.S.C. §204(a). Transfer of ownership must be made expressly. *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

The Letter Agreement did not make an express transfer of copyright. The agreement states "[y]ou have heretofore produced a demonstration tape … and we have paid you the sum of $1,000 therefor." However, transfer of ownership of any material object does not convey any rights in the copyrighted works embodied in the object. 17 U.S.C. §202. As a simple analogy, if Stephen King had only agreed to provide Warner with a copy of his novel "The Shining" for a fee, that agreement would not have also conveyed the work's publishing and motion picture rights. *Cf. Playboy*, 53 F.3d at 564 (check legend providing that "payee acknowledges payment in full for the assignment … of all right, title and interest in and to the following items: [a description of the painting followed]" insufficient because it did not mention "copyright" and because it transferred rights to "items" while "ownership of copyright in a work is distinct from ownership of the material object").

The Letter Agreement does not use the word "copyright" or indeed expressly refer to any rights at all. Rather, without "any compensation" or other consideration (the $1,000 "heretofore" paid for the tape is 'past consideration' which is not consideration under black letter law) it purports to retroactively confirm that the musical compositions on the tape "shall be deemed included" with the music to be subsequently composed pursuant to a concurrent [work-for-hire] agreement. This language is not sufficient to transfer any copyright

ownership and, as discussed *supra*, cannot serve to define the musical works on the tape as "made for hire" with Warner as the author for copyright purposes.

The Composer Loanout Agreement dated January 25, 1980. referenced in the Letter Agreement, is referred to in the counterclaim as a "work for hire" agreement. However, Warner could not acquire copyright ownership in pre-existing materials through a subsequent work-for-hire agreement and the Composer Loanout Agreement thus cannot transfer copyright interests in "Clockworks" or "Valse Triste." *Gladwel*l, 265 Fed. Appx. at 626, 2008 LEXIS 2291.

Accordingly, the Letter Agreement and the Composer Loanout Agreement do not convey any copyright ownership or exclusive rights in any pre-existing works, directly or indirectly, to Warner.

**C. Warner Does Not Own the Copyrights in "Clockworks" and "Valse Triste":**

The two works in question in the counterclaim, "Clockworks" and "Valse Triste", were created before January 25, 1980 and included on the demonstration tape referred to in the Letter Agreement, as effectively admitted by Warner in its answer and counterclaim. (Warner admits in Paragraph 8 of the Counterclaim that "Valse Triste" is on the demonstration tape and admits in Paragraph 36.a. of the Answer that it was used in "The Making of The Shining", a documentary . While Warner attempts to plead otherwise in the counterclaim, Warner admits in Paragraph 36.f. of the Answer that "Clockworks" was used in "The Shining" trailer and the January 25, 1980 Letter Agreement states that "[o]ne of the compositions in said demonstration tape is now included in the trailer

…." Thus, Warner has admitted that both "Clockworks" and "Valse Triste" were on the "demonstration tape."

As discussed, *supra*, these works were not "made for hire" on Warner's behalf and copyright ownership was not transferred to Warner pursuant to any agreement by Serendip's predecessors in interest. Warner has not alleged that Serendip has executed any instrument assigning, transferring or licensing any interests in the copyright in the subject works to Warner. Warner is not the owner of copyright or of any exclusive right and cannot register the copyrights. 17 U.S.C. §408(a). Warner cannot exercise any of the exclusive rights of the copyright owner without a license. 17 U.S.C. §106. Warner has no standing to sue for copyright infringement. 17 U.S.C. §501(b).

Accordingly, Warner cannot establish the prerequisite for its counterclaim, namely the exclusive ownership of the copyrights in "Clockworks" and "Valse Triste", and Warner's counterclaim does not state a claim as matter of law.

## II

## WARNER'S COUNTERCLAIM IS PREEMPTED BY THE COPYRIGHT ACT

Assuming *arguendo* that Warner might establish ownership of an exclusive right under the subject copyrights, Warner's counterclaim that Serendip's alleged acts are "unlawful, unfair and/or fraudulent acts within the meaning of California Business and Professions Code Section 17200" is preempted by the Copyright Act, because the state law claim does not present any qualitative change from a copyright infringement claim.

The Copyright Act sets out the test for preemption of state statutory or common law which may conflict with the federal policies embodied in the Act. The Act provides that no person is entitled to any legal or equitable rights under the common law or statutes of any State that are equivalent to any of the exclusive rights specified in Section 106 for works of authorship which come within the subject matter of copyright. 17 U.S.C. §301(a).

This section requires a two-part analysis:

First, the work of authorship must fall within the "subject matter of copyright" as defined in §§102 and 103 of the Act. The Act clearly embraces "works of authorship", including "musical works" and "sound recordings" as within its subject matter. 17 U.S.C. §102. The subject matter of this counterclaim, The counterclaim involves "musical works" on "sound recordings", registered for copyright protection in the United States.

Second, the statute requires that the state law create rights equivalent to any of the exclusive rights specified in §106 in order to be preempted. 17 U.S.C. §301(a). The Copyright Act, 17 U.S.C. §106, provides that "the owner of copyright under this title has the exclusive rights to do or authorize any of the following:

> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> * * * * * * * * *
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale; * * *."

The counterclaim involves the sale of copyrighted musical works on recordings, which requires reproduction and distribution of

"phonorecords."

To avoid preemption, the state law claim must contain additional elements that result in a qualitative change in the nature of the claim, i.e., one that alters either the act that forms the basis of the claim or the rights to be protected. *Del Madera Props. V. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987), overruled on other grounds, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 45 (1994).

The gravamen of the counterclaim by Warner is that Serendip is "selling recordings", containing "Valse Triste" and "Clockworks", while claiming they are Serendip's copyrighted works, and will continue to do so. Sale of recordings involves two exclusive rights of the copyright owner under §106 of the Copyright Act, *supra*, and, if unauthorized, constitutes copyright infringement, not unfair competition or some other tort. "To the extent the improper business act complained of is based on copyright infringement, the claim … is preempted." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)(a case involving license fees for karaoke devices where, like Warner, the plaintiff lacked standing to sue for copyright infringement). This principle applies even where a claim under the Copyright Act fails. "The shadow actually cast by the Act's preemption is notably broader than the wing of its protection" (citations omitted). *Lanard Toys Ltd. v. Novelty Inc.*, 511 F.Supp. 1020, 1032 (C.D. Cal. 2007).

Furthermore, unfair competition necessarily involves "passing off" in the sale of items to the public in the trademark (or copyright) sense where A sells A's work claiming it is B's. *Fisher v. Dees*, 794 F.2d

432, 440 (9th Cir. 1986) ("Under California law … the public must be misled into thinking that the defendant's product is actually the plaintiff's."). However, the counterclaim here is actually what is known as "reverse passing off" in the trademark sense, where A sells B's work claiming it is A's. (In the counterclaim, Warner alleges that Serendip is selling music recordings of Warner's authorship claiming they are Wendy Carlos's.) In the copyright sense, reverse passing off is copyright infringement, not unfair competition. *Id.* at 440, *See generally Nimmer on Copyright*, §1.01(B)(2)(e).

The act of Serendip that Warner alleges constitutes fraud actually amounts to no more than the alleged false claiming of authorship. (The counterclaim alleges that Serendip falsely represented to the Copyright Office that Wendy Carlos is the author of "Clockworks" and "Valse Triste.") However, any state tort cause of action regarding the false claiming of authorship is preempted by federal law *Fisher*. 794 F.2d at 440. Moreover, the element of *scienter* alleged by Warner does not transform copyright infringing acts into a qualitatively different claim either. If such a bare allegation of knowledge would suffice to create a state law cause of action, then most garden variety copyright infringement actions could be brought in the state courts, which would defeat Congress's intent to have federal law occupy the entire field of copyright law. *See Sybersound Records*, 517 F.3d at 1150-51. In fact, the Copyright Act recognizes the element of *scienter* and provides for increased statutory damages for willful copyright infringement. 17 U.S.C. §504(c)(2).

In bringing this counterclaim, Warner implicitly recognizes that it does not have standing to sue for copyright infringement, because it

did not register its purported copyrights in the subject works or record proof of any exclusive right in the Copyright Office. 17 U.S.C. §501(b). To "cure" this defect, Warner attempts to dress copyright infringement claims in state law clothes. *Cf. Sybersound Records*, 517 F.3d at 1150-51. That attempt must fail, because the counterclaim is clearly preempted by the Copyright Act.

**CONCLUSION**

For the reasons stated herein[2], Serendip respectfully submits that Warner cannot state a claim to ownership of the copyrights in "Clockworks" and "Valse Triste", and the counterclaim fails to state a claim as a matter of law. Even assuming *arguendo* that Warner, might be able to establish an exclusive interest in the subject copyrights, the counterclaim does not state a claim as it is preempted by the Copyright Act.

Plaintiff and Counter-Defendant Serendip LLC respectfully requests that this Court sustain the motion to dismiss Defendant and Counter-Claimant Warner Bros. Entertainment Inc.'s Counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state any claim upon which relief may be granted, and grant such other and further relief to Serendip LLC as this Court deems just.

---

[2] Among other issues not addressed herein are that the Counterclaim pleads numerous inconsistent facts, seeks remedies including damages and attorneys' fees which are not available under the California statute, and fails to plead facts establishing the basis for diversity jurisdiction.

Dated: February 26, 2009

By____________s/_____________
**Annemarie Franklin**
Attorney for Plaintiff and Counter-Defendant Serendip LLC

**Frederick H. Cohn**
Of Counsel on the Brief