1 │ CALDWELL LESLIE & PROCTOR, PC
  │ CHRISTOPHER G. CALDWELL, SBN 106790
2 │ Email: caldwell@caldwell-leslie.com
  │ LINDA M. BURROW, SBN 194668
3 │ Email: burrow@caldwell-leslie.com
  │ TINA WONG, SBN 250214
4 │ Email: wong@caldwell-leslie.com
  │ 1000 Wilshire Blvd., Suite 600
5 │ Los Angeles, California 90017-2463
  │ Telephone (213) 629-9040
6 │ Facsimile (213) 629-9022

7 │ Attorneys for Defendant and Counter-claimant
  │ WARNER BROS. ENTERTAINMENT INC.

8

9 │ **UNITED STATES DISTRICT COURT**

10 │ **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| SERENDIP LLC & WENDY CARLOS, | CASE NO. CV 08-07739 RGK (RCx) |
| Plaintiffs, | The Honorable R. Gary Klausner |
| v. | |
| WARNER BROS. ENTERTAINMENT INC., | **DEFENDANT AND COUNTER-CLAIMANT WARNER BROS. ENTERTAINMENT INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendant. | |
| | **F.R.C.P. 56** |
| WARNER BROS. ENTERTAINMENT INC. | [Notice of Motion and Motion for Partial Summary Judgment; Declarations of Linda M. Burrow; Jan Harlan; Michael J. Kory and Roberta Thornburg and Exhibits Thereto filed herewith] |
| Counter-claimant, | |
| v. | |
| SERENDIP LLC, a New York limited liability company, and WENDY CARLOS, an individual, | Date:         November 30, 2009 |
| | Time:         9:00 a.m. |
| Counter-defendants. | Ctrm: 850 |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALDWELL
LESLIE &
PROCTOR

Defendant Warner Bros. Entertainment Inc. ("Warner Bros.") hereby submit the following Separate Statement of Uncontroverted Facts and Conclusions of Law in support of their Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **1.**     Wendy Carlos is a composer and recording artist. | FAC, ¶¶ 4, 6. |
| **2.**     Carlos (then known as "Walter Carlos") released an album in 1968 entitled "Switched on Bach" in which she arranged and performed well-known Bach compositions on the Moog synthesizer. | FAC, ¶ 6; Deposition of Wendy Carlos ("Carlos Depo.") at 12:14-17.[1] |
| **3.**     Carlos began using the name "Wendy" professionally in the mid-1970s. | Carlos Depo. at 12:14-20. |

[1] All deposition excerpts are attached as Exhibits to the Declaration of Linda M. Burrow.

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **4.**    Music composed, arranged, performed, and/or recorded by Carlos and her producing partner Rachel Elkind for the motion picture *A Clockwork Orange* was licensed to Polaris Productions, Inc. ("Polaris") by Carlos' loan-out company, Trans-Electronic Music Productions, Inc. ("TEMPI"), pursuant to the terms of an undated written agreement (the "ACO Agreement"). | Declaration of Linda M. Burrow ("Burrow Decl.,"), Exh. 1, ¶ 2; FAC, ¶ 6. |
| **5.**    The ACO Agreement grants Polaris "the right . . . to re-record [Carlos' music] on the sound track of the Photoplay" and further provides that Polaris shall have "the unqualified and unrestricted right to publicly perform the same everywhere, for profit or otherwise and by all means and methods now or later known, free of any obligation to pay any fees of any kind to Walter Carlos or any other person or corporation." | Burrow Decl., Exh. 1, ¶ 2. |
| **6.**    *A Clockwork Orange* was directed by Stanley Kubrick, who died in 1999. | Declaration of Jan Harlan ("Harlan Decl."), ¶ 9; Burrow Decl., Exh. 3. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **7.** Kubrick took a hands-on approach to virtually every aspect of his films, including the music used in the films. | Harlan Decl., ¶ 4. |
| **8.** For *A Clockwork Orange*, Kubrick worked directly with Carlos with respect to the pieces she was to arrange. | Harlan Decl., ¶ 4. |
| **9.** Jan Harlan, who was an assistant to Kubrick on the film *A Clockwork Orange*, had little personal involvement in the discussions between Kubrick and Carlos at the time. | Harlan Decl., ¶ 4. |
| **10.** Kubrick represented Polaris in its negotiation of the ACO Agreement. | Harlan Decl., ¶ 4. |
| **11.** Peter Knecht, an attorney with Warner Bros., reviewed many or all of the license agreements that Polaris entered into for *A Clockwork Orange*. | Harlan Decl., ¶ 4. |
| **12.** Peter Knecht is dead. | Harlan Decl., ¶ 4. |
| **13.** Polaris assigned its rights in the ACO Agreement to Warner Bros. | Declaration of Roberta Thornburg ("Thornburg Decl."), ¶ 3. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **14.**    For *A Clockwork Orange*, Carlos arranged and performed works based upon public domain works by Purcell, Beethoven, and Rossini. | Harlan Decl., ¶ 3; Burrow Decl., Exhs. 2, 3. |
| **15.**    Stanley Kubrick approached Carlos and Rachel Elkind to compose and record music for the motion picture, *The Shining*. | Harlan Decl., ¶ 5. |
| **16.**    Kubrick gave Carlos and Elkind direction regarding what they were to compose for *The Shining* including an instruction to write music "to the novel." | Burrow Decl., Exh. 3 (*The Shining* DVD, Disc 2, "*Wendy Carlos, Composer*" at 4:00) and Exh. 4. |
| **17.**    While making a demonstration tape of music for *The Shining*, Carlos and Elkind spoke with Kubrick about the project, and Kubrick mentioned Sibelius' "Valse Triste" in response to a question by Elkind. | Deposition of Annemarie Franklin ("Franklin Depo.") at 118:2-18, 122:8-12. |
| **18.**    In the demonstration tape, Carlos included an arrangement of Sibelius' "Valse Triste." | Franklin Depo. at 122:8-15. |
| **19.**    Carlos created her arrangement of Sibelius' "Valse Triste" in 1978. | Carlos Depo. at 90:3-9; Franklin Depo. at 102:6-9. |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **20.** Carlos did not obtain a license for her use of Sibelius' composition, "Valse Triste." | Franklin Depo. at 102:6-18. |
| **21.** The demonstration tape also included two compositions entitled "Clockworks" and "Chase Music." | Carlos Depo. at 89:14-22; FAC, ¶ 36(e). |
| **22.** "Clockworks" was used as background music for the trailer for *The Shining*. | FAC, ¶ 36(f); Burrow Decl., Exh. 3 (*The Shining* DVD, Disc. 1). |
| **23.** In an agreement dated January 25, 1980 (the "Composer Loanout Agreement"), TEMPI agreed that Carlos and Elkind would "write, compose, arrange, orchestrate and conduct the recording of the musical score of [The Shining]," and that the fruits of their efforts would be "work[s] made for hire" for Peregrine Filmmaatschappij, N.V. ("Peregrine"). TEMPI also agreed to "grant[] to [Peregrine] all rights which it may have in and to all of said material." | Burrow Decl., Exh. 5 at 1 and ¶ 4. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 24. In the Composer Loanout Agreement, TEMPI warranted that music delivered by Carlos and Elkind "shall be wholly original with Composer or shall be in the public domain throughout the world, and shall not infringe upon, or violate any copyright of . . . any person." | Burrow Decl., Exh. 5, ¶ 5. |
| 25. In a separate document dated January 25, 1980 (the "Letter Agreement"), TEMPI and Peregrine acknowledge that Carlos and Elkind had "heretofore produced a demonstration tape in connection with [*The Shining*]" and that one or more of the compositions in the demonstration tape had been included in the trailer for the film. | Burrow Decl., Exh. 6. |
| 26. The Letter Agreement provides that "all musical compositions contained in said demonstration tape shall be deemed included within the music composed by [Carlos and Elkind] under [the Composer Loan out Agreement]." | Burrow Decl., Exh. 6. |
| 27. Stanley Kubrick intended to acquire all rights to the music described in the Composer Loanout Agreement and the Letter Agreement. | Harlan Decl., ¶ 7. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **28.**     Rachel Elkind intended to have TEMPI transfer all rights to the music described in the Composer Loanout Agreement and the Letter Agreement. | Harlan Decl., ¶ 7. |
| **29.**     In 1979, Carlos began a personal relationship with Annemarie Franklin. | Franklin Depo. at 21:5-10. |
| **30.**     In 1980, Carlos and Franklin formed Serendip LLC ("Serendip") to promote Carlos' music. | Franklin Depo. at 18:10-11, 21:17-21. |
| **31.**     In 1999, Carlos and Franklin converted Serendip into a limited liability company, and Franklin became Serendip's member manager. | Franklin Depo. at 21:22-22:2, 23:13-16. |
| **32.**     Carlos is a member of Serendip and regularly executes agreements on Serendip's behalf. | Franklin Depo. at 22:8-17, 81:25-82:17. |
| **33.**     In 1984, Serendip acquired the copyrights to Carlos' music through an oral assignment, which Carlos subsequently affirmed in writing. | Burrow Decl., Exh. 7. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **34.** One of Franklin's responsibilities as member manager of Serendip is to police the copyrights to Carlos' music for unlicensed uses, which she generally does once a week. | Franklin Depo. at 25:10-12, 26:18-22. |
| **35.** Filmed by Stanley Kubrick's daughter Vivian, *The Making of the Shining* was first broadcast on television in 1980 and later included in home video editions of *The Shining*. | Harlan Decl., ¶ 8; Burrow Decl., Exh. 3 (*The Shining* DVD, Disc. 1). |
| **36.** Carlos' arrangement of Sibelius' "Valse Triste" plays in the background of the closing scenes of *The Making of the Shining*. | Franklin Depo., 122:12-15; Burrow Decl., Exh. 3 (*The Shining* DVD, Disc. 2), Exh. 8; FAC, ¶ 36(a). |
| **37.** In February 2000, Franklin and Carlos briefly mentioned to Jan Harlan that they did not believe Ms. Kubrick had the right to use "Valse Triste" in *The Making of the Shining*. Although Harlan wrote to Carlos seeking additional information about this in April 2000, Franklin and Carlos did not pursue the issue, leading Harlan to believe they had dropped the matter. | Harlan Decl., ¶ 9. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **38.** In February 2001, Vivian Kubrick emailed Carlos to say that she was restoring *The Making of the Shining*. She wrote, "It turns out that the Valse Triste music, at the end of the documentary, is breaking up and I'd like to fix that if I can. Do you still have your original recording of Valse Triste, any format, but preferably stereo? [¶] If you do still have it, will you call me . . . ASAP and let's see if we can figure out how to get it here in time for dubbing." | Burrow Decl., Exh. 9. |
| **39.** In response to Vivian Kubrick's request, Carlos enthusiastically sent her a recording of "Valse Triste." | Franklin Depo., 108:11-17; Burrow Decl., Exh. 8. |
| **40.** In a February 16, 2001 email to Vivian Kubrick and Ned Price at Warner Bros., Franklin stated: "The music credit for the music by Wendy Carlos used in 'The Making of the Shining' documentary should have read something like this: [¶] Sibelius: 'Valse Triste', arranged and performed by Wendy Carlos; arrangement (c) 1978 Serendip LLC." Price replied: "I will add this credit to the video master today." | Burrow Decl., Exh. 10. |

CALDWELL
LESLIE &
PROCTOR

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| **41.** At the time Carlos supplied the restored "Valse Triste," neither Franklin nor Carlos indicated to Vivian Kubrick or Ned Price that Ms. Kubrick did not have the right to use "Valse Triste" in her film. | Carlos Depo. at 97:5-24; Burrow Decl., Exhs. 8, 10. |
| **42.** The DVD version of *The Making of the Shining* credits Carlos in the manner requested by Franklin. | Burrow Decl., Exh. 3. |
| **43.** After Kubrick's death, Jan Harlan, who was Kubrick's brother-in-law and long-time executive producer, began work on a documentary that later became *Stanley Kubrick: A Life in Pictures*. | Harlan Decl., ¶¶ 2, 9. |
| **44.** Many of Kubrick's collaborators, including Carlos, agreed to be interviewed for the documentary. | Harlan Decl., ¶ 9. |
| **45.** Carlos was interviewed on two separate occasions in 2000 by Harlan, during which she recounted her experiences working with Stanley Kubrick on *A Clockwork Orange* and *The Shining*. | Carlos Depo. at 43:4-44:20; 45:15-46:7; Harlan Decl., ¶¶ 9-10. |

CALDWELL
LESLIE &
PROCTOR

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| **46.**     In the second interview session, she played music from *A Clockwork Orange* and *The Shining*, as well as music that had been part of the demonstration tape she and Elkind submitted to Kubrick for *The Shining*. | Franklin Depo. at 67:25-68:6; Carlos Depo. at 47:12-17; Harlan Decl., ¶ 10. |
| **47.**     At the time, neither Franklin, who met with Harlan at least once during his interviews of Carlos in 2000, nor Carlos, objected to the use of Carlos' music in Harlan's documentary. | Harlan Decl., ¶¶ 9-10. |
| **48.**     In about March 2001, Harlan sent Carlos a VHS of the finished production of *Stanley Kubrick: A Life in Pictures* before its public release. | Carlos Depo., 48:17-50:6; Harlan Decl., ¶ 11; Burrow Decl., Exh. 11. |
| **49.**     Carlos and Franklin watched the pre-release VHS of *Stanley Kubrick: A Life in Pictures*. | Carlos Depo. at 49:20-51:2; Burrow Decl., Exh. 11. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **50.** In a March 2001 email to Harlan, Carlos told him she had watched the entire pre-release VHS of *Stanley Kubrick: A Life in Pictures*, including the film clips included in the documentary, and that it was "beautiful" and "an exquisite job." She added, "[H]ere's to good luck with distribution and theater/broadcast releases!" | Burrow Decl., Exh. 11. |
| **51.** As of March 2001, Carlos was aware that *Stanley Kubrick: A Life in Pictures* contained film clips from *A Clockwork Orange* that contained her music. | Carlos Depo. at 51:15-21, 56:14-57:12. |
| **52.** In 2006, Harlan produced a documentary entitled *Oh Lucky Malcolm* about Malcolm McDowell, the lead actor in *A Clockwork Orange*. | Harlan Decl., ¶ 12. |
| **53.** Harlan sent Carlos a pre-release copy of *Oh Lucky Malcolm* before the documentary was released on DVD. | Harlan Decl., ¶ 12; Franklin Depo. at 88:24-89:4. |

CALDWELL
LESLIE &
PROCTOR

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| **54.** On September 5, 2006, Harlan heard from Franklin, who claimed that *Oh Lucky Malcolm's* use of film clips from *A Clockwork Orange* infringed Serendip's copyright in Carlos' music. | Harlan Decl., ¶ 13; Burrow Decl., Exh. 12. |
| **55.** In response, Harlan apologized and explained that he thought Warner Bros. owned the music in *A Clockwork Orange.* | Harlan Decl., ¶ 13; Burrow Decl., Exh. 13. |
| **56.** Harlan also explained that *Oh Lucky Malcolm* was made on a small budget and that he and other contributors were not paid at all, and asked Franklin to grant him a license for reasonable fee. | Harlan Decl., ¶ 13; Burrow Decl., Exh. 13; Harlan Decl., Exh. A at S000164. |
| **57.** When Franklin insisted on a license fee of $20,000 for one of the two clips, which was nearly the cost of the entire documentary, Harlan instead removed both clips from the film. | Harlan Decl., ¶ 13: Burrow Decl., Exhs. 13, 14; Carlos Depo. at 104:18-22. |
| **58.** *Oh Lucky Malcolm* was shown only once with Carlos' music in it: at a film festival in Traverse City, Michigan in 2006, for which neither Harlan nor Warner Bros. received any compensation. | Franklin Depo. at 88:15-23; Harlan Decl., ¶ 12. |

| **UNCONTROVERTED FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| **59.**    After the festival, Carlos wrote to Harlan: "Let the film festival showing go, it wasn't commercial, but a nice event that's now passed.  Glad to help.  I sure would have preferred to get credit during it, but that's okay, it's over." | Harlan Decl., ¶ 13 and Exh. A at S000164. |
| **60.**    On September 5, 2006, Franklin told Harlan that his use of Carlos' music in *Stanley Kubrick: A Life in Pictures* was also a copyright violation. | Harlan Decl., ¶ 14; Burrow Decl., Exh. 12. |
| **61.**    Prior to September 2006, neither Franklin nor Carlos had ever claimed that *Life in Pictures* infringed Serendip's copyrights in Carlos' works. | Harlan Decl., ¶ 14; Franklin Depo. at 85:25-87:13; Burrow Decl., Exhs. 11, 15, 16. |
| **62.**    On September 24, 2007, Franklin wrote to Alan Horn, President and Chief Operating Officer of Warner Bros. and informed him of "unlicensed music use" in the documentaries, *Stanley Kubrick: A Life in Pictures*; *Wendy Carlos, Composer*; and *Oh Lucky Malcolm*. | Burrow Decl., Exh. 17. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **63.** In the same letter dated September 24, 2007 to Horn, Franklin wrote: "The unlicensed music used in the aforementioned documentaries is only the tip of the iceberg in that none of the music by Wendy Carlos for 'A Clockwork Orange' appears to have been licensed by Warner Bros. for home video DVD or digital download use." | Burrow Decl., Exh. 17. |
| **64.** Franklin's September 24, 2007 letter was the first time that Plaintiffs ever raised with Warner Bros. the issue of Warner Bros.' alleged violations of Serendip's copyrights in the music from *A Clockwork Orange*. | Franklin Depo. at 45:22-46:11; 135:15-136:3. |
| **65.** *Oh Lucky Malcolm*, *Stanley Kubrick: A Life in Pictures*, and *Great Bolshy Yarblockos* contain film clips from motion pictures directed by Kubrick, including film clips from *A Clockwork Orange* that contain Carlos' music. | Burrow Decl., Exh. 3 (*A Clockwork Orange* DVD, Disc 2 and *Stanley Kubrick: A Life in Pictures DVD*) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **66.** Prior to writing the September 24, 2007 letter, Franklin suspected, based on the agreement's timing, that it did not grant rights to use Carlos' music in home videos, although she believes she had not seen the ACO Agreement when she wrote the letter. | Franklin Depo. at 37:6-38:15, 39:6-20. |
| **67.** Keith Zajic responded to Franklin's letter on October 5, 2007 and enclosed a copy of the ACO Agreement. | Franklin Depo. at 38:20-22; Burrow Decl., Exh. 1. |
| **68.** *A Clockwork Orange* first appeared on home video in 1980. | Declaration of Michael J. Kory ("Kory Decl."), ¶ 3. |
| **69.** Carlos was aware that *A Clockwork Orange* was available on home video since at least the 1990s, and she was aware that the home video version contained her music. | Carlos Depo. at 42:6-11, 42:16-18. |
| **70.** Carlos has owned a home video player since at least the 1980s. | Carlos Depo. at 41:7-25. |
| **71.** Since the 1980s, Warner Bros. has invested millions of dollars in producing, marketing, and distributing *A Clockwork Orange* in home video. | Kory Decl., ¶ 3. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| **72.**     Warner Bros. has invested close to $ 1 million in the production, marketing and distribution of *Life in Pictures* in the United States. | Kory Decl., ¶ 4. |

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| *Plaintiffs' First Cause of Action for Copyright Infringement Arising Out of Use of Carlos' Music in Home Videos of <u>A Clockwork Orange</u> is Barred by the Doctrine of Laches* | |
| **1.**     A lawsuit is barred by laches where there is (a) unreasonable delay by the plaintiff and (b) prejudice to the defendant. | *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). |
| **2.**     Delay is measured by the length of time that passes between "when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit." | *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952 (9th Cir. 2001). |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| **3.**      Plaintiffs knew or should have known about the allegedly infringing conduct in the early 1980s, when *A Clockwork Orange* first appeared on home video. | Kory Decl., ¶ 3 (*A Clockwork Orange* first appeared on home video in 1980); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001) (rejecting plaintiff's argument that he did not know the extent of the alleged infringement and noting that the works were "publicly-released, widely-distributed movies, beginning some forty years ago"). |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
| --- | --- |
| **4.**     Plaintiffs' delay of nearly 30 years was unreasonable. | Kory Decl., ¶ 3 (*A Clockwork Orange* has been distributed on home video in the U.S. continuously since 1980.); Carlos Depo. at 42:6-18 ("Q: Do you recall when you first saw Clockwork Orange on home video?  A: . . . I don't recall that . . . . Certainly in the '90s I did. . . . Q:  In the '90s, did the version you saw have your music in it? A:  Yes."); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952-53 (9th Cir. 2001); *Hayden v. Chalfant Press, Inc.*, 177 F.Supp. 303, 307-08 (S.D. Cal. 1959), aff'd, 281 F.2d 543 (9th Cir. 1960). |
| **5.**     "[T]he decision to apply the doctrine of laches lies on a sliding scale: the longer the plaintiff delays in filing her claim, the less prejudice the defendant must show in order to defend on laches." | *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 734 (7th Cir. 2003); *see also Miller v. Glenn Miller Prods.*, 454 F.3d 975, 1000 (9th Cir. 2006). |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| **6.** A defendant is prejudiced if the plaintiff's delay results in (a) "lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died," or (b) economic expenditures made in reliance on the plaintiff's silence. | *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952-53, 955-56 (9th Cir. 2001). |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| 7.    Warner Bros. was prejudiced by Plaintiffs' delay because numerous witnesses, including Kubrick, have died and because Warner Bros. has incurred millions of dollars in expenses related to the home video release of *A Clockwork Orange* in reliance on Plaintiffs' silence. | *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955-56 (9th Cir. 2001); *Jackson v. Axton*, 25 F.3d 884, 889 (9th Cir. 1994), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); Harlan Decl., ¶¶ 3-4, 9 (Stanley Kubrick, who represented Polaris in negotiating the ACO Agreement and worked directly with Carlos with respect to the musical pieces she was to arrange, died in 1999); *id.*, ¶ 4 (Peter Knecht, a Warner Bros. attorney who reviewed many or all of the license agreements that Polaris entered into for *A Clockwork Orange*, is dead); Kory Decl., ¶ 3 (Since 1980, Warner Bros. has invested millions of dollars in producing, developing, and distributing *A Clockwork Orange* on home video). |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| **8.**      The doctrine of laches bars Plaintiffs' claim for copyright infringement arising out of use of Carlos' music in home videos of *A Clockwork Orange*. | *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). |

***Plaintiffs' Copyright Infringement Claim in Connection with Stanley Kubrick: A Life in Pictures is Barred by Laches***

| | |
|---|---|
| **9.**      A lawsuit is barred by laches where there is (a) unreasonable delay by the plaintiff and (b) prejudice to the defendant. | *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). |
| **10.**      Delay is measured by the length of time that passes between "when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit." | *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952 (9th Cir. 2001). |
| **11.**      Plaintiffs had actual knowledge of the alleged copyright infringement in March 2001, *before* the documentary was publicly released. | Carlos Depo. at 48:17-50:6, 51:15-21, 56:14-57:12; Harlan Decl., ¶ 11; Burrow Decl., Exh. 14. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| **12.**    Plaintiffs' decision to wait seven-and-a-half years to file their lawsuit was unreasonable delay. | Carlos Depo. at 48:17-50:6, 51:15-21, 56:14-57:12; Harlan Decl., ¶ 11; Burrow Decl., Exh. 14; *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952 (9th Cir. 2001). |
| **13.**    Warner Bros. has been prejudiced by Plaintiffs' delay, as it has promoted and distributed *Stanley Kubrick: A Life in Pictures* while Plaintiffs sat silent. | Kory Decl., ¶ 4; *Jackson v. Axton*, 25 F.3d 884, 889-90 (9th Cir. 1994), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). |

*Warner Bros. Owns the Copyright to Music Related to* **The Shining** *Under a "Work Made for Hire" Agreement*

| | |
|---|---|
| **14.**    A "work made for hire" is "a work specially ordered or commissioned for use as a contribution to a collective work, as part of a motion picture . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." | 17 U.S.C. § 101. |

CALDWELL
LESLIE &
PROCTOR

| **UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** | **SUPPORTING CITATIONS** |
|---|---|
| **15.**    A "work made for hire" may be ordered or commissioned explicitly or implicitly, and later memorialized in writing. | *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 558-59 (2d Cir. 1995). |
| **16.**    "Valse Triste," "Clockworks," and "Chase Music" were ordered or commissioned by Stanley Kubrick for use as a contribution to the motion picture *The Shining*, and the agreement was later memorialized in a signed writing. | Harlan Decl., ¶¶ 5-7; Burrow Decl., Exh. 3 (*The Shining* DVD, Disc 2, "*Wendy Carlos, Composer*" at 4:00) and Exh. 4; Franklin Depo. at 118:2-18, 122:8-12 (Kubrick, Carlos, and Elkind discussed the music for *The Shining* prior to delivery of the demonstration tape; in the conversation, Kubrick mentioned Sibelius' "Valse Triste," an arrangement of which was later created and included in the demonstration tape). |
| **17.**    Warner Bros. owns the copyrights to "Valse Triste," "Clockworks," and "Chase Music" pursuant to a "work made for hire" agreement between TEMPI and Peregrine. | Burrow Decl., Exhs. 5 and 6. |

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| *Alternatively, Warner Bros. Owns the Copyrights to Music Related to **The Shining** Pursuant to an Assignment of Rights* | |
| **18.** Copyright ownership may be transferred by a writing signed by the owner of the rights conveyed. | 17 U.S.C. § 204(a). |
| **19.** In the Composer Loanout Agreement, TEMPI agreed to "grant to [Peregrine] all rights which it may have in and to all of" the music composed, arranged, orchestrated, and/or recorded by Carlos and Elkind for *The Shining*. This provision applied to music contained in the demonstration tape by virtue of the Letter Agreement. | Burrow Decl., Exhs. 5 and 6. |
| **20.** Kubrick and Elkind intended to have TEMPI transfer to Peregrine all rights to the music described in the Composer Loanout Agreement and the Letter Agreement. | Burrow Decl., Exhs. 5 and 6; Harlan Decl., ¶¶ 6-7. |
| *Plaintiffs Granted a License for Use of "Valse Triste" in **The Making of the Shining*** | |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
| --- | --- |
| **21.** A nonexclusive license may be implied "where the copyright holder engages in conduct 'from which [the] other [party] may properly infer that the owner consents to his use. . . . Consent . . . may be inferred based on silence where the copyright holder knows of the use and encourages it." | *Field v. Google Inc.*, 412 F.Supp.2d 1106, 1116 (D. Nev. 2006); *see also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10:03[A][7] (Matthew Bender, Rev. Ed.). |
| **22.** Carlos agreed to allow Vivian Kubrick to use "Valse Triste" in *The Making of the Shining* when she provided Kubrick with a new recording for the DVD version of the documentary. | Burrow Decl., Exhs. 11 and 12; Franklin Depo. at 108:11-17; Carlos Depo. at 97:5-24. |
| **23.** Franklin also granted a license when she provided Vivian Kubrick and Warner Bros. with credit information for the use of "Valse Triste" in *The Making of the Shining*. | Burrow Decl., Exh. 11. |
| **24.** Plaintiffs' failure to assert their rights in "Valse Triste" at the time *The Making of the Shining* was being restored also supports a finding of laches. | Burrow Decl., Exhs. 8, 9, 10; Carlos Depo. at 97:5-24; *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952 (9th Cir. 2001). |

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| **Warner Bros.' Use of Carlos' Music in Documentaries and "Extra Content" was "Fair Use"** | |
| **25.**      In adjudicating a fair use defense, the Court considers (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. | 17 U.S.C. § 107. |
| **26.**      The determinative question under the first factor is whether the new work is transformative, *i.e.*, whether it "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." | *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| 27. Use of film clips containing Carlos' music in the documentaries *Stanley Kubrick: A Life in Pictures*, *Great Bolshy Yarblockos! Making A Clockwork Orange*, and *Oh Lucky Malcolm* is transformative, as the documentaries are biographies and commentaries about the life and works of Stanley Kubrick and Malcolm McDowell. | *Monster Communications, Inc. v. Turner Broad. Sys., Inc.*, 935 F.Supp. 490, 493-94 (S.D.N.Y. 1996); *Hofheinz v. A&E Television Networks*, 146 F.Supp.2d 442, 446-47 (S.D.N.Y. 2001); Harlan Decl., ¶¶ 9, 12; Burrow Decl., Exh. 3. |
| 28. The second factor recognizes that "some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." | *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994). |
| 29. Derivative works are entitled to less protection from fair use than original works. | *Peter Letterese and Assocs., Inc. v. World Institute of Scientology Enters.*, 533 F.3d 1287, 1312 (11th Cir. 2008). |
| 30. The second factor favors Warner Bros. because Carlos' music in *A Clockwork Orange* consists entirely of derivative works that are not inherently creative or within the "core" of copyright protection. | Harlan Decl., ¶ 3; Burrow Decl., Exhs. 2 and 3. |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| **31.**     The third factor "asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of copying." | *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994). |
| **32.**     The third factor favors Warner Bros. because no more of Carlos' music was used in the documentaries than was necessary in playing the film clips, and because the use was incidental.  Carlos' music appears in the documentaries only because it happens to be in the film clips selected to illustrate the life and works for Kubrick and McDowell. | *Lennon v. Premise Media Corp.*, 556 F.Supp.2d 310, 325-26 (2008); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007); Burrow Decl., Exh. 3. |
| **33.**     The fourth and "undoubtedly the single most important" of the factors is the effect that a defendant's use will have on the potential market for and the value of the copyright owner's music. | *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985). |
| **34.**     The fourth factor favors Warner Bros., as it is very unlikely that someone in the market for Carlos' music would opt for one of the documentaries instead. | *Hofheinz v. A&E Television Networks*, 146 F.Supp.2d 442, 448-49 (S.D.N.Y. 2001). |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| 35.    Warner Bros. use of Carlos' music in the documentaries *Stanley Kubrick: A Life in Pictures*, *Great Bolshy Yarblockos! Making A Clockwork Orange* and *Oh Lucky Malcolm* is permitted under the fair use doctrine. | 17 U.S.C. § 107; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, 586 (1994); *Monster Communications, Inc. v. Turner Broad. Sys., Inc.*, 935 F.Supp. 490, 493-94 (S.D.N.Y. 1996); *Hofheinz v. A&E Television Networks*, 146 F.Supp.2d 442, 446-47 (S.D.N.Y. 2001); *Peter Letterese & Assoc., Inc. v. World Institute of Scientology Enters.*, 533 F.3d 1287, 1312 (11th Cir. 2008); *Lennon v. Premise Media Corp.*, 556 F.Supp.2d 310, 325-26 (2008); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985); Harlan Decl., ¶¶ 3, 9, 12; Burrow Decl., Exhs. 2 and 3. |
| *Four of Plaintiffs' Eight Causes of Action are Preempted by the Copyright Act* | |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| **36.**  The federal copyright laws preempt causes of action under state law where (1) the works at issue come within the subject matter of copyright; and (2) the state law rights being asserted are "equivalent to any of the exclusive rights within the general scope of copyright." | *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006). |
| **37.**  To avoid preemption, a state law claim must contain an "extra element" that changes the nature of the action and distinguishes it from a cause of action under the Copyright Act. | *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1143 (9th Cir. 2006.) |
| **38.**  Plaintiffs' second cause of action for unjust enrichment is preempted, as it claims that Warner Bros. was "unjustly enriched" by profits from sales of home videos containing unlicensed music by Carlos.  There is no "extra element" that distinguishes this claim from copyright infringement. | FAC, ¶ 24; *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 791-93 (2003). |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| **39.** Plaintiffs' sixth cause of action for dilution is preempted, because it claims that Warner Bros. appropriated the copyright owner's right of adaptation. There is no "extra element" that distinguishes this claim from copyright infringement. | FAC, ¶ 52; 17 U.S.C. § 106(2)-(4); Pub. L. No. 94-553, 90 Stat. 2541 (1976); *Dastar Corp. v. 20th Century Fox Film Corp.*, 539 U.S. 23, 26, 37-38 (2003). |
| **40.** Plaintiffs' seventh cause of action for unfair competition is preempted, as it alleges that Warner Bros. reproduced Carlos' music without proper license and that it created an (allegedly inferior) adaptation of Carlos' music. There is no "extra element" that distinguishes this claim from copyright infringement. | FAC, ¶ 56; *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F.Supp.2d 1083, 1091-92 (N.D. Cal. 2008). |
| **41.** Plaintiffs' eighth cause of action for breach of the covenant of good faith and fair dealing is preempted, as it alleges that Warner Bros. misappropriated the copyright holder's rights of reproduction and adaptation in violation of Serendip's copyrights. There is no "extra element" that distinguishes this claim from copyright infringement. | FAC, ¶¶ 62-63; 17 U.S.C. § 106(1)-(2). |

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| **42.**    Plaintiffs' eighth cause of action fails to state a cause of action for breach of the covenant of good faith and fair dealing, which "prevents a party from acting in bad faith to frustrate the contract's *actual* benefits." | *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 353 n.18 (2000) (emphasis in original). |
| **43.**    To the extent Plaintiffs' eighth cause of action states any claim related to the ACO Agreement, that claim is identical to their claim for breach of contract, and therefore fails as a matter of law. | *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1395 (1990) ("If the allegations [of a claim for breach of the implied covenant] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, . . . they may be disregarded as superfluous."). |
| *Several of Plaintiffs' Causes of Action are Non-Existent or Indefinite* | |
| **44.**    Plaintiffs' second cause of action for unjust enrichment fails as a matter of law because "there is no cause of action in California for unjust enrichment." | *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 792 (2003). |

CALDWELL
LESLIE &
PROCTOR

| UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW | SUPPORTING CITATIONS |
|---|---|
| **45.**     Plaintiffs' sixth cause of action fails to the extent it is based on violation of California Business and Professions Code § 14330, which has been repealed, thus "extinguish[ing] the right to recover the penalty" created by the statute. | *Penpower Tech.Ltd. v. S.P.C. Tech.*, 627 F.Supp.2d 1083, 1090 (N.D. Cal. 2008). |
| **46.**     Plaintiffs' sixth cause of action for dilution in violation of "similar laws of other states" should be stricken, as it is indefinite and fails to provide Warner Bros. with adequate notice of the violations alleged against it. | *Levine v. Citibank*, No. 07CV2032 WQH CAB, 2008 WL 220282, at *2-3 (S.D. Cal. Jan. 24, 2008) (dismissing as inadequately pled a claim for "multiple violations of the [FRCA]," and noting that "Defendant need not guess which provision of law Plaintiff is suing under, but instead must be put on fair notice of such claim(s)."). |

CALDWELL
LESLIE &
PROCTOR

| **UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** | **SUPPORTING CITATIONS** |
|---|---|
| **47.**    Plaintiffs' seventh cause of action for misappropriation and unfair competition "within the meaning of the common law and statutes of the various states" should be stricken, as it is indefinite and fails to provide Warner Bros. with adequate notice of the violations alleged against it. | *Levine v. Citibank*, No. 07CV2032 WQH CAB, 2008 WL 220282, at *2-3 (S.D. Cal. Jan. 24, 2008) (dismissing as inadequately pled a claim for "multiple violations of the [FRCA]," and noting that "Defendant need not guess which provision of law Plaintiff is suing under, but instead must be put on fair notice of such claim(s)."). |

DATED:  November 4, 2009       Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC


By _____/s/_____
        LINDA M. BURROW
Attorneys for Defendant WARNER BROS.
ENTERTAINMENT INC.

CALDWELL
LESLIE &
PROCTOR