**Annemarie Franklin, Esq.** (CA Bar No. 150734)
E-mail: af102@nyc.rr.com
830 Broadway
P.O. Box 1024 Cooper Station
New York, NY 10276-1024
212-475-1630

8852 Sandpiper Circle
Fountain Valley, CA  92708
917-686-7420

**Frederick H. Cohn**
E-mail: fcohn@frederickhcohn.com
61 Broadway, Suite 1601
New York, NY 10006
212-768-1110

Attorneys for Plaintiffs and Counter-Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERENDIP LLC & WENDY CARLOS,<br><br>                    Plaintiffs,<br><br>          v.<br><br>WARNER BROS. ENTERTAINMENT INC.,<br><br>                    Defendant. | CASE NO. CV 08-07739 RGK (RCx)<br><br>The Honorable R. Gary Klausner<br><br>**MEMORANDUM OF POINTS & AUTHORIYIES IN SUPPORT OF PLAINTIFFS' & COUNTER-DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Fed.R.Civ.P. 56 |
| WARNER BROS. ENTERTAINMENT INC.,<br><br>                    Counter-Claimant,<br><br>          v.<br><br>SERENDIP LLC & WENDY CARLOS,<br><br>                    Counter-Defendants. | Date: November 30, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 850<br>          255 E. Temple St.<br>          Los Angeles, CA |

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ..................................…… .. iii

PRELIMINARY STATEMENT …………………………… .... 1

STATEMENT OF FACTS ..................................…… .... 1

SUMMARY OF ARGUMENT ................................…… .... 3

ARGUMENT ..….....…....….....….....…....….....….…… .... 4

   I    WARNER IS LIABLE FOR COPYRIGHT
        INFRINGEMENT ......……………………… .... 4

   A.    Serendip Has Established Copyright Infringement
        by the Video Release of "A Clockwork Orange" … … 4

   B.    Serendip Has Established Copyright Infringement
        by the Video Releases of Content Included with "A
        Clockwork Orange," "The Shining" and "Stanley
        Kubrick: A Life In Pictures" …………......……... . . 7

   II    WARNER IS LIABLE FOR VIOLATION OF
        WENDY CARLOS'S RIGHT OF PUBLICITY .......... ...10

i

III    WARNER'S FIRST CLAIM FAILS BECAUSE
       COUNTER-DEFENDANTS DID NOT INFRINGE        .
       COPYRIGHT IN "THE SHINING" …………………... …12


IV     WARNER'S SECOND, THIRD AND FOURTH
       CLAIMS FAIL BECAUSE WARNER DOES NOT
       OWN THE COPYRIGHTS IN THE WORKS
       CREATED BEFORE JANUARY 25, 1980 …………... …14


V      WARNER'S FOURTH CLAIM IS PREEMPTED BY
       THE COPYRIGHT ACT ……………………………… …18


       CONCLUSION  ..............................……………………… .. 20

1

# TABLE OF AUTHORITIES

2                                                                                *Page*

3      **Cases**

4

5      *Apple Computer , Inc. v. Formula Int'l. Inc.*, 725 F.2d

6      521, 523 (9th Cir. 1984)                                                  4, 8

7

8      *Binns v. Vitagraph Co.*, 210 N.Y. 51 (1913)                             10

9

10     *Del Madera Props. V. Rhodes & Gardner, Inc.*, 820

11     F.2d 973 (9th Cir. 1987)                                                  18

12

13     *Durgom v. Columbia Broadcasting System, Inc.*, 29

14     Misc.2d 394, 214 N.Y.S.2d 752, 754 (Sup. Ct. 1961)                        10

15

16     *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir.

17     1990)                                                                     15

18

19     *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076

20     (9th Cir. 2000)                                                           5

21

22     *Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S.

23     340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)                          5

24

25     *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986)                           19

26

27     *Geisel v. Poynter Products, Inc.* 295 F.Supp. 333, 356

28     (S.D.N.Y. 1968)                                                           11

1

2

*Gladwell Government Services v. County of Marin*,

Case No. 05-17327, 265 Fed. Appx. 624, 2008 U.S. App.        3, 14, 15,

LEXIS 2291, 2008 WL 268268 (9th Cir. 2008)                        16

5

*Lanard Toys Ltd. v. Novelty Inc.*, 511 F.Supp. 1020,

1032 (C.D. Cal. 2007)                                             19

8

*LGS Architects, Inc. v. Concordia Homes*, 434 F.3d

1150, 1156 (9th Cir. 2006)                                      3, 4

11

*Martin v. New Metropolitan Fiction, Inc.*, 139 Misc.

290, 248 N.Y.S. 359, 362 (Sup. Ct. 1931)                          10

14

*Neyland v. Home Pattern Co.*, 65 F.2d 363, 364 (2d

Cir. 1933)                                                        11

17

*Playboy Enters., Inc. v. Dumas*, 53 F.3d 549 (2d Cir.

1995), *cert denied*, 516 U.S. 1010 1995)                     14, 15

20

*Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp.2d 369,

392 (S.D.N.Y.2000)                                                11

23

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,969 F.2d

410 (7th Cir. 1992)                                               14

26

*Shields v. Gross*, 58 N.Y.2d 338, 347, 461 N.Y.S. 2d

254, 448 N.E.2d 108 (1983)                                        11

*Stephano v. News Group Publications, Inc.*, 64 N.Y.2d
174, 485 N.Y.S.2d 22, 224, 474 N.E.2d 580 (1984)          11

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137
(9th Cir. 2008)                                           3, 19, 20


**Statutes & Rules**

1976 Copyright Act, 17 U.S.C. §101          6, 12, 14

1976 Copyright Act, 17 U.S.C. §106          3, 4, 6

1976 Copyright Act, 17 U.S.C. §201          13, 14, 17

1976 Copyright Act, 17 U.S.C. §202          15

1976 Copyright Act, 17 U.S.C. §204(a)       15

1976 Copyright Act, 17 U.S.C. §301(a)       18

1976 Copyright Act, 17 U.S.C. §304(a)(4)(B)  5

1976 Copyright Act, 17 U.S.C. §408(a)       17

1976 Copyright Act, 17 U.S.C. §410(c)        4

1976 Copyright Act, 17 U.S.C. §501(b)                                    18

1976 Copyright Act, 17 U.S.C. §504(c)(2)                                 20

California Business and Professional Code §17200                         18

Federal Rules of Civil Procedure Rule 56                               *passim*

**Treatises**

M. Nimmer & D. Nimmer, *Nimmer on Copyright*
§1.01(B)(2)(e)                                                           19
§2.09(E)(1).                                                            12

**Law Review Articles**

Neil S. Nagano, *Comment, Past Copyright Licenses and the New Video Software Medium*, 29 U.C.L.A.L.Rev. 1160, 1184 (1982)                                                  6

**PRELIMINARY STATEMENT**

This case presents a controversy about Defendant and Counter-Claimant Warner Bros. Entertainment Inc. ("Warner," including any predecessor in interest) making use of copyrighted music currently owned by Plaintiff and Counter-Defendant Serendip LLC ("Serendip") in various motion picture and home video productions. The Verified Amended Complaint ("Compl.") was brought against Warner on December 11, 2008, alleging, *inter alia*, that various uses by Warner of music, composed or arranged, performed and recorded by Plaintiff and Counter-Defendant Wendy Carlos ("Carlos") in connection with the motion pictures "A Clockwork Orange" and "The Shining," were unauthorized and constituted copyright infringement. Carlos also alleges that Warner's sale of a home video, entitled "Wendy Carlos, Composer," and use of her name in another home video, was without written consent and violates her right of publicity.

Serendip and Carlos respectfully submit that the various video uses were not authorized by contract or law, various subject musical works were not "made for hire" and Warner has no exclusive interest in the copyrights as a matter of law, and that Serendip and Carlos are entitled to partial summary judgment as to liability pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**STATEMENT OF FACTS**

Wendy Carlos composed or arranged, performed and recorded music which was used in the soundtrack and trailer  of Stanley Kubrick's 1971 motion picture "A Clockwork Orange." ("Compl." ¶6) The ACO Agreement (Compl., Ex. A), which predated the invention of the home VCR, provided only for synchronization rights, and public performance rights with respect to Carlos's music, and did not include the separate rights to reproduce and distribute home video copies to the public. (Compl. ¶14) The music and master sound recordings of Carlos's music for "A Clockwork Orange" were registered for copyright

1

through various registrations and the copyrights are now owned by plaintiff Serendip LLC, of which Carlos is a member. (Compl. ¶¶10, 11; Carlos Decl. ¶18, Ex. B)

In 1978, Wendy Carlos composed or arranged, performed and recorded music, which was on demonstration tapes sent to Stanley Kubrick in an attempt to induce her engagement as a composer for the music soundtrack of the motion picture "The Shining." During this period, Carlos had no agreement of any kind to provide music for this motion picture. (Compl. ¶9) Music and master sound recordings of Carlos's demonstration music for "The Shining," including "Clockworks" and "Valse Triste," were registered for copyright in 2007 by Serendip. (Compl. ¶12, Ex. B)

At sometime subsequent to the theatrical release of "A Clockwork Orange," predecessors of defendant Warner Bros. Entertainment Inc. ("Warner") began to sell home video copies of the motion picture containing Carlos's music in the soundtrack, without authorization from any entity connected with Carlos. (Compl. ¶14)   At sometime Warner began to sell home video copies containing Carlos's demonstration music for "The Shining," without authorization from any entity connected with Carlos. (Compl. ¶¶9, 36.a, 36.f) Warner also included Carlos's music in other video productions contained in various home video releases sold without authorization from any entity connected with Carlos. (Compl. ¶36) In 2007, Warner included a video production entitled "Wendy Carlos, Composer," and used her name in the credits of another video production in connection with music which was not hers, in home video releases sold without Carlos's written consent. (Compl. ¶¶42-44)

2

**SUMMARY OF ARGUMENT**

Serendip has established (1) ownership of copyrights in the infringed material, and (2) violation of at least one of the exclusive rights granted to copyright holders. *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1156 (9th Cir. 2006). When a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement. *Id.* at 1156.. Warner's various video releases containing Carlos's music were not authorized by agreement or law. 17 U.S.C. §106 (granting copyright holders the exclusive right to reproduce the copyrighted work and to distribute copies of the work).

Warner's use of Wendy Carlos's name, image and voice in "Wendy Carlos, Composer" and use of her name in another video were without her written consent in violation of New York Civil Rights §§50,51.

The copyrights in demonstration music for "The Shining" did not vest in Warner upon creation of the works, and the copyrights were not transferred to Warner. The works could not be retroactively deemed to be "made for hire" because "[w]orks 'specially ordered or commissioned' can only be made after the execution of an express agreement between the parties." *Gladwell Government Services v. County of Marin*, 2008 App. LEXIS 2291 2008 WL 268268 (9th Cir. 2008). Exclusive copyright ownership is the prerequisite of Warner's claims, and without it, Warner's counterclaims must fail.

Warner's counterclaim that Serendip's alleged acts are "unlawful, unfair and/or fraudulent acts within the meaning of California Business and Professions Code Section 17200" is preempted by the Copyright Act because it does not present any qualitative change from a copyright claim. "To the extent the improper business act complained of is based on copyright infringement, the claim … is preempted." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008).

3

# ARGUMENT

## THE SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56 "the Court may grant summary judgment in the plaintiff's favor upon all or any part of any particular claim." *Wang Laboratories v. Mitsubishi Electronics*, 860 F.Supp. 1448, 1450 (C.D.Cal. 1993).

## I

## WARNER IS LIABLE FOR COPYRIGHT INFRINGEMENT

**A.** **Serendip Has Established Copyright Infringement by the Video Release of "A Clockwork Orange"**

To succeed on its copyright infringement claims, a plaintiff need only establish (1) ownership of the copyright in the infringed material, and (2) violation of at least one of the exclusive rights granted to copyright holders. *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1156 (9th Cir. 2006) (citation omitted); *see* 17 U.S.C. §106 granting copyright holders the exclusive right to reproduce the copyrighted work and to distribute copies of the work. When a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement. *LGS Architects, op. cit.* at 1156 (citation omitted).

### 1. Serendip Owns Valid Copyrights

a.   A certificate of copyright registration made before or within five years after first publication of the work constitutes *prima facie* evidence of the validity of the copyright and of the facts stated on the certificate. 17 U.S.C. §410(c). The defendant has the burden of overcoming the presumption of validity. *Apple Computer , Inc. v. Formula Int'l. Inc.*, 725 F.2d 521, 523 (9th Cir. 1984).

b.   Wendy Carlos's Declaration and the copyright registration certificates attached in Exhibit B establish the timely registration of copyright for pieces of her music and for her sound recording underlying the

master recordings used in "A Clockwork Orange," and Serendip's current ownership of the same. The same *prima facie* evidence presumption applicable to the original registration certificate extends to certificates of renewal registered within the final year of the renewal period. 17 U.S.C. §304(a)(4)(B).

        c.    In addition to the presumption of copyright validity and the facts stated on the certificates, the Carlos Declaration furnishes indisputable affirmative evidence of her creation of each of the works and each work's originality, i.e., "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000), *quoting Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

     **2.**    **Warner Exceeded the Scope of the Copyright License**

        a.    The grant of rights in the ACO Agreement, which was drafted by Warner's predecessor in interest, did not include a license to reproduce and distribute copies of the motion picture containing Carlos's music on home video devices. (Compl. Ex. A) The agreement, which was executed in 1971, well before the invention of the home VCR, provided only for the traditional exploitation of the music synchronized with the motion picture by public performance (i.e., exhibition in theaters and by television), and the "by all means and methods now or hereafter known" clause unambiguously applies only to the right of public performance. This "future technologies" clause naturally comes into play in connection with the public performance right, because the initial means of exhibition of motion pictures was in theaters, and only later was extended to television. Television exhibition, which began with regular over the air transmission directly to homes, has frequently expanded over time by new "means and methods" to include closed circuit TV, community antenna TV, cable TV,

satellite TV, broadband TV, and by free, subscription, pay per view, on demand, etc., telecasts, but does not include distribution of video devices such as videocassettes or DVDs for home viewing..

　　　　　b.　　By definition in the Copyright Act, 17 U.S.C. §101, public performance does not include performance of a work in a family home, and thus distribution of home video devices does not invoke the public performance right, which is a separately delineated right form the rights of reproduction and distribution of copies to the public. 17 U.S.C. §106. (In fact, Warner admits that all home video devices contain a prominent notice that they may not be used for public performance. Answer ¶15.)

　　　　　c.　　The Ninth Circuit addressed a similar question to the instant case in holding that distribution of home video devices did not constitute exhibition by means of television. *Cohen v. Paramount*, 845 F.2d 851, 854 (9th Cir. 1988). The Court noted that home video was not invented when the license was executed in 1969, and the parties "could not have bargained for, or paid for, the rights associated with videocassette reproduction," and the "holder of the license should not now 'reap the entire windfall' associated with the new medium" *Id.*, p. 854. (quoting Neil S. Nagano, *Comment, Past Copyright Licenses and the New Video Software Medium*, 29 U.C.L.A.L.Rev. 1160, 1184 (1982). *See also Rey v. Lafferty*, 990 F.2d 1379, 1388-90 (1st Cir. 1993).

　　　　　d.　　A copyright license must be construed in accordance with the purpose underlying federal copyright law, namely to protect the author's rights. *S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1088. State law is relied upon for contractual construction, e.g., interpreting the contract against the drafter, but only to extent that such rules do not conflict with copyright law or policy. *Id*., p. 1088. Consistent with copyright policy, copyright licenses are assumed to prohibit

any use not authorized. *Id.*, p. 108x; *Cf. Cohen*, 845 F2d at 853 (license analyzed to determine what uses it affirmatively permits).

    e. The public performance right clause in ¶2 of the ACO Agreement containing the "all means and methods" language is separated from the synchronization rights clause by "furthermore," commonly defined as "in addition to what precedes." The public performance right clause also contains the language that it is granted "free of any obligation to pay any fees of any kind to [composer or any entity]." If that language were applied to the entire rights granted in this paragraph, including the synchronization right, it would conflict with ¶9(a) of the agreement, which provides for a synchronization fee, and would cause the entire rights for use of the music in connection with the motion picture to be granted lacking any consideration, making the agreement a nullity. Moreover, the agreement is silent about the separate rights to reproduce and distribute copies of music in connection with the motion picture by sale to the public

    Accordingly, the music license granted in the ACO Agreement cannot be interpreted to include the rights to reproduce and distribute copies of the motion picture containing Carlos's music in home video devices. Warner has admitted distributing "A Clockwork Orange" on home video (Answer ¶14) and has thus infringed Serendip's copyrights.

**B.** **Serendip Has Established Copyright Infringement by the Video Releases of  Content Included with "A Clockwork Orange," "The Shining" and "Stanley Kubrick: A Life In Pictures"**

  **1.** **Serendip Owns Valid Copyrights**

    In addition to the certificates of copyright registration made in connection with Wendy Carlos's music used in "A Clockwork Orange," Carlos's Declaration and the attached copyright registration certificates for "A Clockwork Orange – Wendy Carlos's Complete Original Score" and "Rediscovering Lost

Scores" establish registration of copyright by Serendip for additional music composed in connection with "A Clockwork Orange" and other projects, including demonstration music in connection with "The Shining." The defendant has the burden of overcoming the presumption of validity of the copyrights registered within five years of first publication, including the sound recording copyright for "Rediscovering Lost Scores." *Apple Computer , Inc. v. Formula Int'l. Inc*., 725 F.2d 521, 523 (9th Cir. 1984). The evidentiary weight accorded a certificate of registration made later than five years after first publication of the work is within the discretion of the Court. 17 U.S.C. §410(c).

> **2.    Warner Used Copyrighted Music in Home Video Devices**

Warner has admitted the following uses of Wendy Carlos's music in connection with home video devices distributed by Warner. (Answer, ¶36) These uses infringe one or more of Serendip's copyrights as specified:

a.    "The Making of The Shining," distributed in home video devices with "The Shining;" contains "Valse Triste," registered for copyright in "Rediscovering Lost Scores;"

b.    "Stanley Kubrick: A Life In Pictures," distributed individually in home video devices, contains "Title Music From A Clockwork Orange," "Theme From A Clockwork Orange," and "March From A Clockwork Orange," each individually registered for copyright, and "William Tell Overture," all registered for copyright in the sound recording underlying the master recordings used in "A Clockwork Orange," and "Clockworks," registered for copyright in "Rediscovering Lost Scores;"

c.    "Great Bolshy Yarblokos!: Making A Clockwork Ornage," distributed in home video devices with "A Clockwork Orange," contains  "Title Music From A Clockwork Orange," individually registered for copyright, and

8

included in the copyright registration of the sound recording underlying the master recordings used in "A Clockwork Orange;"

        d.     "Wendy Carlos, Composer," distributed in home video devices with "The Shining," contains "Country Lane," individually registered for copyright, and included in the copyright registration in the sound recording underlying the master recordings used in "A Clockwork Orange," "Orange Minuet," included in the copyright registrations for "A Clockwork Orange – Wendy Carlos's Complete Original Score," and "Chase Music," included in the copyright registration of "Rediscovering Lost Scores;"

        e.     "The Shining" trailer, distributed in home video devices with "The Shining," contains "Clockworks," included in the copyright registration of "Rediscovering Lost Scores;"

        f.     "A Clockwork Orange" trailer, distributed in home video devices with "A Clockwork Orange," contains "William Tell Overture," included in the copyright registration of the sound recording underlying the master recordings used in "A Clockwork Orange;"

        g.     "A Clockwork Orange," distributed individually in home video devices, contains as menu music "Title Music From A Clockwork Orange," individually registered for copyright, and included in the copyright registration of the sound recording underlying the master recordings used in "A Clockwork Orange."

**3.    Warner's Use of Music Was Unlicensed**

Neither Serendip, nor any predecessor in interest, granted Warner the rights to reproduce and distribute copies of Wendy Carlos's music in home video devices. Warner has admitted distributing Carlos's music on the specified home video devices, (Answer ¶36), and has thus infringed Serendip's copyrights.

9

## II

## WARNER IS LIABLE FOR VIOLATION OF WENDY CARLOS"S RIGHT OF PUBLICITY

**A.     Warner Violated N.Y. Civil Rights Law §§50, 51 By Using Wendy Carlos's Name, Picture and Voice Without Her Written Consent**

Warner violated New York Civil Rights Law §§50, 51 by using Carlos's name, picture and voice in the video production "Wendy Carlos, Composer," and her name in connection with others' music in "Great Bolshy Yarblokos!: Making A Clockwork Orange," without her written consent. In fact, the video director of "Wendy Carlos, Composer" acknowledged that he did not have consent. (Carlos Decl. ¶,26 Ex. G) Both uses are for "purposes of trade" as provided by the statute, as these video features are used to promote home video sales of motion pictures, and do not fall within any exception to the statutory written consent requirement.

In general, Section 51 requires written consent from the person whose name, portrait, picture or voice is used for purposes of advertising or trade in the state.[1] The statute and exceptions, including a general "newsworthiness" exception to the "purposes of trade" have been applied strictly by the courts. *See, e.g., Durgom v. Columbia Broadcasting System, Inc.*, 29 Misc.2d 394, 214 N.Y.S.2d 752, 754 (Sup. Ct. 1961) (oral consent not sufficient); *Binns v. Vitagraph Co.*, 210 N.Y. 51 (1913) (fictionalization of actual events took away general exception to trade purposes); *Martin v. New Metropolitan Fiction, Inc.*, 139 Misc. 290, 248 N.Y.S. 359, 362 (Sup. Ct. 1931) (use of plaintiff's picture as spectator at criminal trial to illustrate magazine article was "simply to add to the attractiveness and sale of the

---

[1]Section 51 of the New York Civil Rights Law provides in part that:
[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait, picture or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use … N.Y. Civ. Rights Law § 51 (McKinney's 2009).

publication," not connected to actual events depicted).

An express exception in the statute creates an "implied license" to use the name, portrait, picture or voice "to sell the artistic production." *Geisel v. Poynter Products, Inc.* 295 F.Supp. 333, 356 (S.D.N.Y. 1968); *Neyland v. Home Pattern Co.*, 65 F.2d 363, 364 (2d Cir. 1933). That exception is limited to a use of the "name, portrait, picture or voice of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait, picture or voice used in connection therewith." N. Y. Civ. Rights Law §51. In the case at bar, however, Warner's use was not "in connection with" selling or advertising Carlos's own musical productions, but rather in connection with another's video production and others' music.

Commercial use of identity beyond the scope of a license (Compl. 41, 42) is both breach of contract and a violation of Section 51. *Shields v. Gross*, 58 N.Y.2d 338, 347, 461 N.Y.S. 2d 254, 448 N.E.2d 108 (1983); *Stephano v. News Group Publications, Inc.*, 64 N.Y.2d 174, 485 N.Y.S.2d 22, 224, 474 N.E.2d 580 (1984) ("Where … the defendant has otherwise exceeded the limitations of the consent [citing *Shields*], the plaintiff may seek damages or other relief under the statute, even though he might properly sue for breach of contract."); *Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp.2d 369, 392 (S.D.N.Y.2000) (plaintiff can assert right of publicity claim against ex-licensee whose license has been terminated).

Carlos has proven a claim for violation of her civil rights and Warner has admitted the uses complained of with respect to "Wendy Carlos, Composer." Warner's admissions, together with the uncontroverted proof of Warner's use of Wendy Carlos's name for purposes of trade in connection with others' music, are sufficient to establish liability under New York Civil Rights Law Section 51, and this Court should grant summary judgment to that effect.

### III

### WARNER'S FIRST CLAIM FAILS BECAUSE COUNTER-
### DEFENDANTS DID NOT INFRINGE COPYRIGHT IN "THE SHINING"

Warner cannot sustain the first claim because neither Serendip nor Wendy Carlos has used any sounds appearing in "The Shining" for the purposes alleged by Warner to infringe the copyright in "The Shining," or indeed for any purpose whatsoever.

As defined by the Copyright Act, "[m]otion pictures" are audiovisual works consisting of related images which, when shown in succession, impart an impression of motion together with accompanying sounds, if any. 17 U.S.C. §101. Furthermore, "[s]ound recordings" are works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture …. *Id*. Thus, with respect to music appearing in "The Shining," Warner's copyright registration covers only the sounds in the motion picture soundtrack. *See also Nimmer on Copyright*, §2.09(E)(1). Since the motion picture copyright covers only the sounds which are an integral part of the motion picture, a separate registration would be required to cover the underlying sound recording masters or musical compositions, with the proper limiting language as to what original work is included in the copyright claim.

In any event, Warner's claim of ownership of the copyright in "Dies Irae" is preposterous. "Dies Irae" is a Gregorian Chant melody dating from the thirteenth century, in the public domain, and freely used for centuries by composers, including Hector Berlioz in his "Symphony Fantastique," and Wendy Carlos, in several compositions in connection with "A Clockwork Orange."

Moreover, pursuant to the Copyright Act, a "work is 'created' when it is fixed in a copy or phonorecord for the first time; … and where the work has been prepared in different versions, each version constitutes a separate work." 17

12

U.S.C. §101. Thus, a prior created work cannot infringe the copyright of a work created later, and a different version of a work carries its own copyright. As the "Title Music" for "The Shining," containing the "Dies Irae," was the last cue that Wendy Carlos recorded for "The Shining" (Carlos Decl. ¶28), all other music cues were prior created works and, by definition, cannot infringe the copyright to "The Shining." 17 U.S.C. §201(a). Likewise, a different version created in 1979 of "Rocky Mountains" than the version used in "The Shining" in 1980, is a separate work with its own copyright and also cannot infringe the copyright to "The Shining." Warner lacks standing to raise claims of copyright infringement of any works created prior to creation of "The Shining," because copyrights in such works are not covered by the copyright registration of "The Shining."

Finally, Wendy Carlos is not now and has never been in the business of "offering for sale, selling, advertising, and distributing compact discs and/or other products" that contain music, let alone any music allegedly owned by Warner, nor does Serendip actually conduct that business either. (Carlos Decl. ¶27 ). In other words, neither counter-defendant has committed the acts alleged by Warner to be infringing.

Accordingly, this claim fails as Warner cannot prove any  infringement by Serendip or Wendy Carlos of the copyright to "The Shining."

**IV**

**WARNER'S SECOND, THIRD AND FOURTH CLAIMS FAIL BECAUSE WARNER DOES NOT OWN THE COPYRIGHTS IN THE WORKS CREATED BEFORE JANUARY 25, 1980**

Warner cannot sustain the second, third and fourth claims because Warner does not own the copyrights in "Clockworks" and "Valse Triste." The copyrights in this pre-existing material did not vest in Warner as a matter of law upon creation of the works, and the copyrights were not transferred to Warner.

13

**A.     Pursuant to Copyright Law, Copyright in the**

**Pre-Existing Works Did Not Vest in Warner**

Warner cannot be considered the "author" of any works on the demonstration tape, because those works were not works "made for hire" pursuant to the Copyright Act. Copyright in a work vests initially in the author of the work at creation. 17 U.S.C. §201(a). Although, if the work is "made for hire," the employer or other person for whom the work is prepared is considered the author, 17 U.S.C. §201(b), the Copyright Act defines a "work made for hire" as a "work specially ordered or commissioned … if the parties agree in a written instrument signed by them that the work shall be considered a work made for hire …." 17 U.S.C. §101. The plain language of the statute means that a work for hire agreement cannot apply retroactively to pre-existing works.

The Ninth Circuit Court of Appeals recently addressed the question of whether material that pre-dated the contract could be considered a work "made for hire" under the Copyright Act. *Gladwell Government Services v. County of Marin*, Case No. 05-17327, 265 Fed. Appx. 624, 2008 U.S. App. LEXIS 2291, 2008 WL 268268 (9th Cir. 2008). The case involved a Rule 12(b)(6) motion to dismiss, while considering a contract referred to in the complaint, which purported to retroactively define pre-existing material as "made for hire." The Court held that "[w]orks 'specially ordered or commissioned' can only be made after the execution of an express agreement between the parties." *Id*., p. 626. The Court considered previous cases, *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 558-59 (2d Cir. 1995), *cert denied*, 516 U.S. 1010 1995) (which also found that the 1976 Copyright Act requires that the parties agree before creation of the work that it will be a work for hire), and adopted the reasoning in *Schiller & Schmidt, Inc. v. Nordisco Corp*.,969 F.2d 410 412-13 (7th Cir. 1992) ("The writing must precede the creation of the property" to qualify as a work-for-hire agreement).

Accordingly, Warner could not acquire copyright ownership in pre-existing material through a work for-hire agreement. *Gladwell*, 265 Fed. Appx. at 626. There was no agreement, commission or order for music prior to January 25, 1980. (Carlos Decl. ¶19, Compl. ¶9 ). Warner thus cannot be considered the "author" of the musical works on the "demonstration tape," all created before the January 25, 1980 Letter Agreement, because those works were not "made for hire," and copyright did not vest in Warner Bros.

**B.     The January 25, 1980 Agreements Did Not Transfer Ownership of the Copyright in Works on the Demonstration Tape**

Because ownership of the copyright in the works on the demonstration tape did not vest in Warner, Warner could only become the owner if the January 25, 1980 Letter Agreement somehow transferred the copyright to Warner. A transfer of copyright ownership is not valid unless it is documented in a signed writing. 17 U.S.C. §204(a). Transfer of ownership must be made expressly. *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

The Letter Agreement (Carlos Decl. Ex. C) did not make an express transfer of copyright. The agreement states "[y]ou have heretofore produced a demonstration tape … and we have paid you the sum of $1,000 therefor." However, transfer of ownership of any material object does not convey any rights in the copyrighted works embodied in the object. 17 U.S.C. §202.  As a simple analogy, if Stephen King had only agreed to provide Warner with a copy of his novel "The Shining" for a fee, that agreement would not have also conveyed the work's publishing and motion picture rights. *See Playboy*, 53 F.3d at 564 (check legend providing that "payee acknowledges payment in full for the assignment … of all right, title and interest in and to the following items: [a description of the painting followed]" insufficient because it did not mention "copyright" and

15

because it transferred rights to "items" while "ownership of copyright in a work is distinct from ownership of the material object").

The Letter Agreement does not use the word "copyright" or indeed expressly refer to any rights at all. Rather, it purports without consideration [the $1,000 previously paid for the tape at the time of the trailer production one year earlier (Carlos Decl ¶21 ), is "past consideration," which is not consideration under black letter law] to retroactively confirm that the musical compositions on the tape "shall be deemed included" with the music to be subsequently composed pursuant to a "work-for-hire" agreement. This language is not sufficient to transfer any copyright ownership and, as discussed *supra*, cannot serve to define the musical works on the tape as "made for hire" with Warner as the author for copyright purposes.

The Composer Loanout Agreement dated January 25, 1980 (Carlos Decl. Ex. C) is referenced in the Letter Agreement, and in the counterclaims as a "work for hire" agreement. All language transferring rights in the Composer Loanout Agreement is premised upon the material being a "work made for hire." However, Warner could not acquire copyright ownership in pre-existing materials through a subsequent work-for-hire agreement and the Composer Loanout Agreement thus cannot transfer copyright interests in "Clockworks" or "Valse Triste." *See Gladwel*l, 265 Fed. Appx. at 626, 2008 LEXIS 2291, 2008 WL 268268.

Accordingly, the Letter Agreement lacks consideration, and that agreement together with the Composer Loanout Agreement do not convey any copyright ownership or exclusive rights in any pre-existing works, directly or indirectly, to Warner.

**C.    Warner Does Not Own the Copyrights in**
         **"Clockworks" and "Valse Triste"**

16

The two works in question in these claims, "Clockworks" and "Valse Triste," were created before January 25, 1980 and included on the demonstration tape referred to in the Letter Agreement, as admitted by Warner. (CntrCl. ¶¶12, 13).

As discussed, *supra*, these works were not "made for hire" on Warner's behalf and copyright ownership was not transferred to Warner pursuant to any agreement by Serendip's predecessors in interest. Serendip has not executed any instrument assigning, transferring or licensing any interests in the copyrights in the subject works to Warner. Warner is not the owner of the copyrights or of any exclusive right and was not eligible to register the copyrights. 17 U.S.C. §408(a).

Warner committed fraud upon the Copyright Office to register these works during the course of this action. (CntrClm ¶17). Among the fraudulent acts were that Warner claimed to be the author, as the employer for hire of Wendy Carlos and Rachel Elkind, despite the fact that Warner could not be the author under any circumstances of works created in 1978, as Warner was incorporated in 2002. (Carlos Decl Ex. E). 17 U.S.C. §201. Furthermore, Warner knew that there was no "work for hire" agreement with Carlos and Elkind prior to creation of the works in 1978. In addition, Warner purposefully did not inform the Copyright Office of the prior copyright registration of "Rediscovering Lost Scores" containing "Clockworks" and "Nocturnal Valse Triste," which Warner knew had been registered by Serendip in 2007. (Compl. ¶12) At the time of Warner's material misrepresentations and omissions, Warner knew they were false and intended to defraud the Copyright Office.

The Copyright Office relied upon Warner's foregoing material representations and omissions and would not have issued copyright registration certificates PA-1621074 for "Clockworks"  and PA-1621069 for "Nocturnal Valse Triste" to Warner had it known the facts.

Accordingly, this Court should give Warner's copyright registrations for "Clockworks" and "Nocturnal Valse Triste" no evidentiary weight, as having been obtained by fraud, 17 U.S.C. 410(c), and hold that Warner has no standing to sue for copyright infringement. 17 U.S.C. §501(b). Warner cannot establish the prerequisite for its second, third and fourth claims, namely the exclusive ownership of the copyrights in "Clockworks" and "Valse Triste," and these claims fail as a matter of law.

# V

## WARNER'S FOURTH CLAIM IS
## PREEMPTED BY THE COPYRIGHT ACT

Warner's claim that Serendip's alleged acts are "unlawful, unfair and/or fraudulent acts within the meaning of California Business and Professions Code Section 17200" is preempted by the Copyright Act, because the state law claim does not present any qualitative change from a copyright infringement claim.

The Copyright Act sets out the test for preemption of state statutory or common law which may conflict with the federal policies embodied in the Act. The Act provides that no person is entitled to any legal or equitable rights under the common law or statutes of any state that are equivalent to any of the exclusive rights specified in Section 106 for works of authorship which come within the subject matter of copyright as specified by Sections 102 and 103. 17 U.S.C. §301(a). To avoid preemption, the state law claim must contain additional elements that result in a qualitative change in the nature of the claim, i.e., one that alters either the act that forms the basis of the claim or the rights to be protected. *See Del Madera Props. V. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987).

The gravamen of the counterclaim by Warner is that Serendip is "selling compact discs," containing "Valse Triste" and "Clockworks", while claiming they

are Serendip's copyrighted works, and will continue to do so. Sale of recordings involves two exclusive rights of the copyright owner under §106 of the Copyright Act, and, if unauthorized, constitutes copyright infringement, not unfair competition or some other tort. "To the extent the improper business act complained of is based on copyright infringement, the claim … is preempted." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)(a case involving license fees for karaoke devices where the plaintiff lacked standing to sue for copyright infringement). This principle applies even where a claim under the Copyright Act fails. "The shadow actually cast by the Act's preemption is notably broader than the wing of its protection" (citations omitted). *Lanard Toys Ltd. v. Novelty Inc.*, 511 F.Supp. 1020, 1032 (C.D. Cal. 2007).

Furthermore, unfair competition necessarily involves "passing off" in the sale of items to the public in the trademark (or copyright) sense where A sells A's work claiming it is B's. *Fisher v. Dees*, 794 F.2d 432, 440 (9th Cir. 1986) ("Under California law … the public must be misled into thinking that the defendant's product is actually the plaintiff's."). However, the counterclaim here is actually what is known as "reverse passing off" in the trademark sense, where A sells B's work claiming it is A's. (In the counterclaim, Warner alleges that Serendip is selling music recordings of Warner's authorship claiming they are Wendy Carlos's.) In the copyright sense, reverse passing off is copyright infringement, not unfair competition. *Id.* at 440; *See also Nimmer on Copyright*, §1.01(B)(2)(e).

The act of Serendip that Warner alleges constitutes fraud actually amounts to no more than the alleged false claiming of authorship. (The counterclaim alleges that Serendip falsely represented to the Copyright Office that Wendy Carlos is the author of various works for which Warner claims authorship.) However, any state tort cause of action regarding the false claiming of authorship is preempted by federal law  *See Fisher*. 794 F.2d at 440. Moreover, the element of scienter alleged

by Warner does not transform copyright infringing acts into a qualitatively different claim either. If such a bare allegation of knowledge would suffice to create a state law cause of action, then most garden variety copyright infringement actions could be brought in the state courts, which would defeat Congress's intent to have federal law occupy the entire field of copyright law. *Cf. Sybersound Records*, 517 F.3d at 1150-51. In fact, the Copyright Act recognizes the element of scienter and provides for increased statutory damages for willful copyright infringement. 17 U.S.C. §504(c)(2).

Warner attempts to dress copyright infringement claims in state law clothes. *See Sybersound Records*, 517 F.3d at 1150-51. That attempt fails, because the fourth claim is clearly preempted by the Copyright Act.

## CONCLUSION

For the reasons stated herein, Plaintiffs and Counter-Defendants submit that the motion for partial summary judgment should be granted.

Respectfully submitted,

Dated: November 4, 2009          By: _____/s_____
                                      **Annemarie Franklin**
                                      Attorney for Plaintiffs and
                                      Counter-Defendants
                                      Serendip LLC & Wendy Carlos

.